## ADAMS v HOOVER

Docket No. 114847. Submitted February 5, 1992, at Grand Rapids. Decided November 2, 1992, at 10:05 A.M.

Norma J. Adams brought a trespass action in the Mason Circuit Court against Wilbur Hoover and the other owners of a parcel of realty that adjoins hers. During a bench trial, the parties, relying on their respective surveys, asserted conflicting claims of ownership of a ten-foot-wide strip along a common boundary. The discrepancies resulted from each survey having fixed at a different location the central quarter corners of the section containing the parcels. The plaintiff's survey, although based on an incorrect location of the central quarter corners, was consistent with other prior recorded surveys of the section and of more than 250 parcels in the section. The defendants' survey located the central quarter corners at their true geographic location, as required by statute. The court, Richard I. Cooper, J., issued a judgment for the plaintiff on the basis of the theory of repose, concluding that boundaries settled and recorded long ago on the basis of the erroneous location of the central quarter corners would be unduly disturbed if the defendants' survey were followed.

The Court of Appeals *held:*

The trial court did not err in granting judgment for the plaintiff. Public policy clearly favors consistency in ascertaining boundary lines, especially where, as in this case, a multitude of boundaries has been established in reliance on the erroneous location of the central quarter corners of the section.

Affirmed.

BOUNDARIES — INCORRECT SURVEYS — REPOSE.

The boundaries of parcels of a section, if settled and recorded on the basis of surveys made incorrect by reliance on an incorrect initial location of a surveying monument, are entitled to repose and should not be altered where to do otherwise would disturb long-established property rights.

REFERENCES

Am Jur 2d, Boundaries §§ 85, 89.

See the ALR Index under Boundaries; Surveys and Surveyors.

*Ronald C. Wilson,* for the plaintiff.

*Roberts, Betz & Bloss, P.C.* (by *Michael T. Small*), for the defendants.

Before: MacKENZIE, P.J., and WEAVER and R. B. BURNS,* JJ.

MacKENZIE, P.J. The parties in this case are adjoining property owners. Plaintiff filed a trespass action against defendants, claiming ownership of a strip of land running the length of the parties' common boundary. Defendants counterclaimed, contending that they owned the disputed property. Following a bench trial, the court rejected plaintiff's claims of title through acquiescence and adverse possession, but granted plaintiff title on the basis of a theory of repose. Defendants·appeal as of right. We affirm.

The rather complicated facts and history of the case were well summarized by the trial court:

Plaintiff purchased a sixty-six foot wide parcel with a house on it in 1962. After ten years of use, she decided to improve her living accommodations by building a new house. Pursuant to this plan she hired Ken Ross, a surveyor, to locate her property lines. Mr. Ross set out monuments and recorded his survey with the Mason County Register of Deeds, dated July 16, 1972.

The Defendants purchased the Walhalla Grocery Store in 1985. They opened the store in early 1986. Plaintiff complained that Defendants were plowing and pushing snow onto her property. Plaintiff and Defendants own adjoining parcels in Section 16 of Branch Township, Mason County, Michigan. Defendants desired to expand the grocery operation to include an improved gas pump operation. Thus

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

they intended to construct a cement pad with new pumps at a location east of the grocery store and west of Plaintiff's parcel. The Defendants hired Lakestate Surveyors, Inc. to perform a survey which was completed in May of 1986. Pursuant to construction of the cement pad, Defendants removed some oak trees and also installed markers showing their eastern boundary according to the Lakestate survey done by Clint Cole.

The Ross survey and the Cole survey do not coincide. A disputed strip of land exists between the two parcels. This strip is approximately nine to ten feet wide. The General Land Office surveyed Branch Township in 1838. In 1904, Surveyor Robert O. Towns relocated the perimeter corners of Section 16. The Towns' survey was recorded with the Mason County Register of Deeds Office. As was the custom, the General Land Office did not monument a center quarter corner. This task was traditionally left for subsequent surveyors. Also there is no showing that Surveyor Towns monumented a center quarter corner for Section 16. Michigan's statutory language states that the "central quarter corner for each section should be established at the intersection of the two right lines connecting their opposite quarter section corners respectively". See Section 103 [MCL 54.103; MSA 5.1029]. In other words the statutory method for the establishment of a center quarter corner of each section is to locate the point where the north-south and east-west quarter lines intersect.

In 1950 Surveyor Robert Lunde established the center quarter corner for Section 16. Mr. Lunde was both an engineer-surveyor for the Mason County Road Commission and also the Mason County Surveyor. The actual survey work was performed by Kenneth Stephens regarding that particular center post. When Mr. Lunde left office, Mr. Stephens became the surveyor for Mason County. Accordingly the center quarter corner for Section 16 of Branch Township is often referred to as the Lunde-Stephens center post, the Lunde center post, or the Stephens center post. Any of

these three designations are appropriate in this case in that we are dealing only with Section 16 in this litigation, thus any reference to Lunde and/or Stephens involves the setting of the 1950 center quarter corner.

Unfortunately, Mr. Stephens evidently established the center quarter post by simply dividing the east-west one quarterline into two equal segments, each having a length of 2,625.89 feet. If the correct statutory method had been used, the west section of the line would have been 2,641.18 feet and the east section of the line would have been approximately 2,610 feet in length. Thus there is a difference of 15.28 feet between the center post established by Mr. Stephens in 1950 and the center post established by Clint Cole evidently first in 1974 or 1975 but utilized for the Hoover survey in 1986. Although Mr. Cole's survey was probably located at the actual geographic center quarter corner, he did not monument or record his determination. [MCL 54.203; MSA 13.115(53)] states that a surveyor who establishes or restores a corner and which is used "as control on any survey by such surveyor" shall record the same with the Register of Deeds in the county involved. Mr. Cole chose to not record the center quarter corner he located and he chose to not record the Hoover survey. Mr. Cole testified that he was aware of the Stephens center quarter corner but that he knew it was not geographically accurate. Thus he felt he had a duty to follow the statute. Mr. Cole also testified that he did not tell the Defendants that he had made this interpretive subjective value judgment; i.e., that there was a difference between the Stephens-Cole center-quarter corners. Mr. Cole did designate boundaries for the Hoovers utilizing measurements based upon Mr. Cole's established center quarter corner. Where there is a survey error or discrepancy, it is traditional to apportion such an error throughout the length of the section line involved. Thus at the point where the Adams-Hoover property adjoins, the margin of error would be approximately nine or ten feet instead of

the fifteen foot difference located at the center of Section 16. Therefore Mr. Cole's survey overlaps onto the Ross survey by about nine or ten feet.

Plaintiff seeks relief based on three theories. Number one, that the Lunde-Stephens center quarter corner constitutes the "official" center post. Number two, that Plaintiff has acquired ownership to the disputed strip based on a theory of adverse possession. And/or number three that Plaintiff has acquired ownership of the disputed strip based on the concept [of] acquiescence. Defendants argue that there is only one correct center quarter corner which derives its authority from Michigan's statutory language which sets that corner at the correct geographic center of a section. Further Defendants argue that Plaintiff has not met its [sic] burden of proof based upon a preponderance of the evidence to support her claim of adverse possession or acquiescence.

The trial court rejected plaintiff's claims of adverse possession and acquiescence, but concluded that the Lunde-Stephens central quarter corners constituted the "official" center post. Citing *Daley v Gruber,* 361 Mich 358; 104 NW2d 807 (1960), the court stated:

The *Daley* Court held that long established occupational lines are not to be disturbed by recent surveys and that settled boundaries shall be allowed repose and shall not be disturbed. More importantly the *Daley* Court observed that if there is a lack of an agreement which would thus threaten an otherwise settled boundary then the court did not hesitate to "imply" agreement from the conduct of the parties, or from surrounding circumstances. The court concluded that the doctrine of repose has the same policy as that behind statutes of limitations.

Although our present case does not involve boundary lines designated by a fence and thus is not on all fours regarding the above mentioned

cases, Plaintiff does prevail in her argument whereby she shows that there are numerous surveys in Section 16 which originate from the erroneous Lunde-Stephens 1950 survey. Although Towns surveyed forty-six years earlier, there has been no showing that subsequent surveys were based upon his determinations regarding our present dispute or the parcels of property adjoining our present litigants. Clearly Lunde and Stephens were in error, however the center quarter corner located by these gentlemen has been utilized by many surveys since 1950 and was so utilized not based upon a dispute resolved by agreement, but instead as a matter of consistency for a prior recorded survey. Thus the Court treats this matter as a finding based upon repose and not a stricter definition of acquiescence.

The following examples are important to the Court when it states that numerous surveys and subsequent surveyors have relied upon the 1950 survey setting the center post:

a. Plat of Alpine Village (Exhibit 70), 64 lots.

b. Fair Oaks Estates (Exhibit 69), 172 lots.

c. Fifteen certified surveys recorded since 1971 (Exhibits 47 through 62).

d. The Lunde-Stephens center post is the only center post for Section 16 recorded in the Office of Register of Deeds for Mason County.

We agree with the trial court's analysis. Public policy clearly favors consistency in ascertaining boundary lines, especially where, as here, a multitude of boundaries has been established in reliance upon the location of the Lunde-Stephens center post. As stated in 12 Am Jur 2d, Boundaries, § 61, p 599:

In surveying a tract of land according to a former plat or survey, the surveyor's only duty is to relocate, upon the best evidence obtainable, the courses and lines at the same place where origi-

nally located by the first surveyor on the ground. In making the resurvey, he has the right to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey. *The original survey in all cases must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it.* On a resurvey to establish lost boundaries, if the original corners can be found, the places where they were originally established are conclusive without regard to whether they were in fact correctly located, in this respect it has been stated that the rule is based on the premise that the stability of boundary lines is more important than minor inaccuracies or mistakes. But it has also been said that great caution must be used in reference to resurveys, since surveys made by different surveyors seldom wholly agree. A resurvey not shown to have been based upon the original survey is inconclusive in determining boundaries and will ordinarily yield to a resurvey based upon known monuments and boundaries of the original survey. [Emphasis added.]

Moreover, in relocating lost monuments the question is not how an entirely accurate survey would have located the lots, but how the original survey stakes located them. Callaghan's Michigan Civil Jurisprudence, § 14, p 365, citing *Diehl v Zanger,* 39 Mich 601 (1878). The rationale behind this proposition is primarily the public's need for finality and uniformity of boundaries and land titles. As stated by Justice Cooley in *Diehl*:

Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation

in many communities. Indeed the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity.

But no law can sanction this course. The surveyor has mistaken entirely the point to which his attention should have been directed. The question is not how an entirely accurate survey would locate these lots, but how the original stakes located them. No rule in real estate law is more inflexible than that monuments control course and distance,—a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice and necessity are never questioned. But its application in other cases is quite as proper, and quite as necessary to the protection of substantial rights. The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks . . . and *if those were discovered they must govern.* [*Id.* at 605. Emphasis added.]

Although defendants' surveyor, Cole, set the central quarter corner post by the statutorily approved method, we find that the trial court properly determined that plaintiff's survey—the Ross survey following the Lunde-Stephens survey—should be upheld. Following the Cole survey would lead to an especially egregious result because of the failure of defendants' surveyor, Cole, to consider prior recorded surveys of land on either side of defendants' property; his failure to record his survey designating the center post, as required by the Corner Recordation Act, MCL 54.203; MSA 13.115(53); and his failure to inform defendants that an alternative center post relied upon by other surveyors existed. As the trial court's opinion stated:

A survey revealed during trial which may have contested the Lunde-Stephens survey was done by

Surveyor Clint Cole. At that time Mr. Cole determined the geographic center post according to the statutory definition. Although all of the approximate nine surveyors doing work in Section 16 would recognize the accuracy of Mr. Cole's determination, nevertheless the remaining eight utilized the Lunde-Stephens center post for their survey purposes. When Mr. Cole did his survey for Plaintiff [sic: defendants] in May of 1986, he did not consider or utilize two prior surveys regarding parcels on each side of the Hoover description which utilized the Lunde-Stephens center post. Further, Mr. Cole declined to record the Hoover description. Finally it is significant that Mr. Cole declined to record the center post designation he made as required by the "Corner Recordation Act." If Mr. Cole had consulted available survey records, he would have been aware of the two recorded surveys one on each side of the Hoover property. Lastly, it is significant that Mr. Cole did not inform the Hoovers that an alternative center post relied upon [by] other surveyors did exist. This information would be especially important when one considers that the Cole eastern boundary for Hoover would have visibly encroached upon a portion of the western lawn/yard area used by Plaintiff.

Certainly surveyors must feel in a dilemma when they follow the statute and become aware or are aware that their technically correct procedure conflicts with work done by a prior surveyor. In most cases such discrepancies are communicated on the survey so that the person purchasing the survey understands the nature of the potential controversy.

To give effect to the technically correct but maverick Cole survey would not merely deprive plaintiff of a significant piece of land, but could unsettle boundaries throughout the entire Section 16. There was testimony that all the other survey-

ors locating lands in Section 16 relied upon the Lunde-Stephens center post. Also presented was evidence of at least 251 other parcels, the descriptions of which relied upon the Lunde-Stephens center post. Public policy favors that the monumented boundaries dictated by these recorded surveys should be left in repose where, as here, there is no physical evidence of conflicting established lines of occupation. To disturb such boundaries under these facts would cause, as Justice COOLEY stated in *Diehl, supra,* incalculable "mischief" and "consternation."

Affirmed.