*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IA,

        Petitioner-Appellee,

v

RM,

        Respondent-Appellant.

UNPUBLISHED
August 13, 2025
8:35 AM

No. 372603
Muskegon Circuit Court
LC No. 2024-000894-PP

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Petitioner brought the present action for the issuance of a personal protection order (PPO), via an ex parte petition, alleging that respondent, the father of her two minor children, engaged in multiple instances of stalking and harassment. In response, the trial court entered an ex parte PPO. Respondent then filed a motion to terminate the PPO, arguing that the petition should not have been granted because it did not contain allegations showing any likelihood of immediate and irreparable injury, loss or damage as required by MCL 600.2950(12). The court held an extensive evidentiary hearing regarding the petition, after which it issued an opinion and order denying respondent's motion to terminate the PPO, finding that petitioner had reasonable cause to believe that respondent's conduct constituted stalking and that evidence showed that respondent engaged in willful conduct involving repeated or continuing harassment of petitioner. We affirm.

## I. FACTS

At the time of filing of the petition in this matter, the parties had joint custody of their two minor children, ages 11 and 9, who attended school in Norton Shores, in Muskegon County. Respondent resided in Norton Shores. Petitioner had recently moved to Idlewild, just east of Baldwin, in Lake County.

Petitioner filed her ex parte petition for issuance of a PPO on February 26, 2024, making various accusations of stalking and harassment by respondent, which took place between January 2023 and February 2024.

-1-

The court issued an ex parte PPO that same day, February 26, 2024, which prohibited respondent from doing any of the following: (1) entering onto the property at the address where petitioner lived; (2) assaulting, attacking, beating, molesting, or wounding petitioner; (3) stalking as defined under MCL 750.411h and MCL 750.411i, with the sole no-contact exception being that he could email using the "parent talking app," only, about parenting time exchanges and emergencies, only; (4) threatening to kill or physically injure petitioner; (5) interfering with petitioner at her place of employment or education or engaging in conduct that impairs her employment or education relationship or environment; (6) intentionally causing petitioner mental distress or exerting control over petitioner via various actions involving any animal in which petitioner has an ownership interest; (7) purchasing or possessing a firearm; (8) using "location devices while [the] children are at petitioner's for parenting time."

Respondent then filed a motion to terminate the PPO and an evidentiary hearing was scheduled by the court. At the hearing, which occurred over three sessions conducted in March, April, and July 2024, the court heard testimony from both parties, as well as petitioner's partner of the last seven years and petitioner's father. Following the completion of testimony on the third day, the parties gave closing statements and the court took the matter under advisement.

In September 2024, the court issued an order denying respondent's motion to terminate the PPO, finding that petitioner had reasonable cause to believe that respondent's conduct constituted stalking and that evidence showed that respondent engaged in willful conduct involving repeated or continuing harassment of petitioner.

## II. STANDARD OF REVIEW

The granting of a PPO is "within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021) (quotation marks and citation omitted). See also *Hayford v Hayford*, 279 Mich App 324, 325; 769 NW2d 324 (2008) ("We review for an abuse of discretion a trial court's determination whether to issue a PPO because it is an injunctive order"). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *SP*, 339 Mich App at 176 (quotation marks and citation omitted). "We review de novo questions of statutory interpretation." *Hayford*, 279 Mich App at 325. We review a trial court's findings of fact, including such findings as they pertain to a PPO, for clear error. *Id*. Under the clear-error standard, we give deference to the lower court and hold that the court clearly erred only if we are "left with the definite and firm conviction that a mistake has been made." *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008) (quotation marks and citation omitted).

> Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [MCR 2.613(C)].

The trier of fact is in the position to consider the demeanor of each witness in weighing the credibility of their respective testimonies. See *SP*, 339 Mich App at 176.

III. ANALYSIS

Respondent first argues that the trial court abused its discretion when it first granted the PPO and again when it denied his motion to terminate the PPO.

In Michigan, PPOs are governed by MCL 600.2950, which contains 30 subsections. Subsection (1) allows an individual to petition the court to enter a PPO to restrain or enjoin certain persons (including an individual with whom he or she has had a child in common), from engaging in conduct falling into a dozen delineated categories (including entering onto premises, assaulting or threatening a named individual, or engaging in conduct that is prohibited under MCL 750.411h (stalking) or MCL 750.411i (aggravated stalking)). "[T]he court must make a positive finding of prohibited behavior by the respondent before issuing a PPO." *Kampf v Kampf*, 237 Mich App 377, 386; 603 NW2d 295 (1999).

Under MCL 600.2950(4), "the trial court is required to issue a PPO if it determines that 'there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1).'" *SP*, 339 Mich App at 177.

In determining whether reasonable cause exists, the court shall consider all of the following:

(a) Testimony, documents, or other evidence offered in support of the request for a personal protection order.

(b) Whether the individual to be restrained or enjoined has previously committed or threatened to commit 1 or more of the acts listed in subsection (1). [MCL 600.2950(4)].

Subsection (12) of the statute pertains to ex parte PPOs and states:

A court shall issue an ex parte personal protection order without written or oral notice to the individual restrained or enjoined or his or her attorney if it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a personal protection order can be issued. [MCL 600.2950(12)].

A. ISSUANCE OF THE PPO

Respondent argues that the court erred by issuing the ex parte PPO in this matter because the petition "presented no cause at all" for any conclusion that respondent may commit any one of the acts stated under MCL 600.2950(1).

Before addressing the petition itself, we note that the Michigan Court Rules indicate that the court presiding over a PPO action should be familiar, if practicable, with other actions affecting the parties. For example, a petitioner is required to advise the trial court, at the time of the filing of her petition, "whether there are any other pending actions in this or any other court, or orders or judgments already entered by this or any other court affecting the parties, including the name

of the court and the case number, if known." MCR 3.703(D)(1). The court rules further state that, "[i]f the petition is filed in the same court as a pending action or where an order or judgment has already been entered by that court affecting the parties, it shall be assigned to the same judge." MCR 3.703(D)(1)(a). Finally, the rules state that, "[i]f there are pending actions in another court or orders or judgments already entered by another court affecting the parties, the court should contact the court where the pending actions were filed or orders or judgments were entered, if practicable, to determine any relevant information." MCR 3.703(D)(1)(b).

In the present case, the judge presiding over the PPO action was also presiding over child custody proceedings involving the parties, and had done so for many years. Throughout the proceedings, the court explained that it was very familiar with the facts in the custody case. Prior to the filing of the petition for PPO, the court had recently modified an order indicating how, when, and where the children would be exchanged, i.e., dropped off by one party and picked up by the other. The modification of that order arose out of an incident in which petitioner's father and brother were exchanging the children when respondent allegedly came over to their car, upset, and "got toe-to-toe" with petitioner's father, at which time respondent also threatened petitioner's brother with violence. More specifically, the allegation was that respondent, years ago, kicked petitioner's brother in the face, knocking him unconscious. During the subject custody exchange, respondent allegedly reminded petitioner's brother of what he had done and said he was willing to do it again right now. As the court noted in the opinion and order denying the motion to terminate the PPO, "[this PPO] matter is intertwined with a very, very high conflict domestic case; 2017-0222-DC. The [f]ather in this case has also been before the [c]ourt for a child neglect case; 2018-5543-NA, where the children were placed with the [m]other." With that background information in mind, we turn to the petition.

Among the allegations contained in the petition were that respondent stalked petitioner by tracking her son's cell phone, which she discovered when she and the children were staying at her sister's home over a weekend in January 2023 and her oldest son came to her, very upset, saying his father was demanding to know where respondent and the children were. Petitioner then looked at her son's phone and "the location was on," and it indicated that respondent's business was looking for the location of the child's phone. The petition alleged further stalking by respondent during petitioner's parenting time on November 10, 2023, when he was seen standing in the park across the street from the school of one of the children, watching petitioner's partner pick the child up from school. Petitioner further indicated that she moved to the Baldwin area to get away from respondent and that, on December 28, 2023, her children informed her that respondent had been coming up to the area, which petitioner perceived to be respondent stalking her. Further, the petition alleged that, just four days later, on January 1, 2024, petitioner and her partner were harassed by respondent, during an exchange of the children at the Montague Police Department, when he stared them down and began taking pictures of their vehicle and its license plate. Finally, the petition contained an allegation regarding an incident that occurred just a week later, on January 8, 2024, alleging that respondent, who lived over an hour away from petitioner, was stalking her by sending her a message on a parenting app stating that he was in Baldwin (i.e., close to petitioner's new home). Petitioner alleged that respondent had never come to that area before petitioner moved there, and petitioner likewise believed this to be an act of stalking.

While it may be the case that none of these allegations, considered separately, would satisfy the requirement for issuance of an ex parte PPO pursuant to MCL 600.2950(12), taken as a whole,

-4-

a series of incidents were alleged to have occurred between January 2023 and February 2024, which support a finding that the trial court did not abuse its discretion when it found that it clearly appeared from those facts that immediate and irreparable injury, loss, or damage would result from the delay required to effectuate notice or that notice itself would precipitate adverse action before a PPO could issue.[1] MCL 600.2950(12). The allegations in the petition, read by the trial court with knowledge of the background of the child custody case, amounted to allegations that respondent was stalking petitioner during times when she was engaged in parenting time with their children.

> "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 750.411h(1)(e).][2]

Under these circumstances, we cannot find that the trial court erred because, among the principled outcomes the trial court could have reached in this matter,[3] was to issue the ex parte PPO by finding that a reasonable person that had recently moved more than an hour away from their former partner, in order to get away from that person, would feel harassed or intimidated or both when that former partner:

- starts randomly appearing near their home;

- messages them indicating that they are near their home (even though the former partner has never been to the area before they moved there); and

- the former partner, during a parenting exchange, stares them and their partner down while filming and taking pictures of them and their license plate (especially in light of the recent

---

[1] We note that, when the order (SCAO Form CC 376) was entered, the court did not check the box indicating that it found that "irreparable injury, loss, or damage will result from the delay required to give notice or notice itself will precipitate adverse action before the order can be issued." But based on the record before us, it appears that such a finding was, in fact, made by the trial court, i.e., it appears the court simply failed to check the box. However, regardless of the reasoning of the trial court, we find that it reached the right result. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

[2] "Harassment" is defined in MCL 750.411h(1)(d) as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose."

[3] See *SP*, 339 Mich App at 176.

allegation that the former partner had threatened their brother with renewed physical violence during a parenting-time exchange).

## B. HEARING TO TERMINATE PPO

The hearing on respondent's motion to terminate the ex parte PPO resulted in substantial additional evidence supporting its issuance pursuant to MCL 600.2950(4).

In his brief on appeal, respondent argues that petitioner presented "no cause at all" for any conclusion that respondent may commit any of the impermissible acts stated in subsection (1) of MCL 600.2950. Respondent's argument is essentially that there is an absence of evidence in this matter suggesting that petitioner has any reasonable apprehension of violence or stalking and, as a result, the court abused its discretion by refusing to terminate PPO. We disagree.

First, we note that the trial court's opinion in this matter made no reference to violence. So, even if we agreed with defendant's assertion that evidence in this matter did not support a finding that petitioner has a reasonable apprehension of violence, such a finding would not support the argument that the trial court abused its discretion when it denied respondent's motion to terminate the PPO. MCL 600.2950 clearly indicates that, while a reasonable apprehension of violence is one basis for which a PPO may be issued, it is far from the only basis.

Second, the testimony at the hearing revealed repeated and continuous instances of behavior by defendant that a reasonable person would deem to be stalking or harassment or both. Particularly concerning was respondent's testimony, which he repeated at least three times during cross-examination by petitioner, that he films or photographs the persons dropping off or picking up the children (including petitioner, her partner and petitioner's father), as well as their license plates, "every single time" a custody exchange takes place. When asked why he takes this action, respondent said, "To document for my safety." At no point during his lengthy testimony in this matter did respondent explain why he was allegedly concerned for his safety at such times.

Again, this testimony must be considered in concert with other testimony at the hearing, including that respondent at some point in the past knocked petitioner's brother unconscious by kicking him in the face. Petitioner's father testified that, because of that incident, he insists on having at least one other adult with him when he exchanges custody of the children. On one recent occasion, petitioner's father said he brought his son with him for an exchange, as which time respondent "[r]eminded [his son] of what he had done before, and that he was willing to do it again right now." According to testimony at the hearing, this last incident involving the threat made to petitioner's brother, led to the custody order being changed to indicate that none of the adults were permitted to get out of their cars. Since then, petitioner and her family have attempted to park in such a manner that the parties do not see one another during the exchange; however, after she and her family park, respondent moves his car so that he has eye contact with them, despite the fact that the custody order suggests they are not supposed to have eye contact with one another. During respondent's testimony, which occurred over portions of two days, respondent never disputed any of that testimony.

Petitioner also testified about another incident in which her partner had just picked up her youngest child from his school (i.e., during her parenting time), and was pulling away to then pick

up her oldest child from school, when both her partner and youngest child saw respondent standing across the street from the elementary school. She suggested it was not the first time that he has exhibited this type of behavior, which she perceived to be stalking. She also testified to an incident on February 17, 2024, when she was dropping her children off with their grandparents at a point halfway between her home and the grandparents' home in Waterford.[4] Respondent allegedly called the children's grandparents to ask where they were. Petitioner believed that was an incident of stalking because it occurred during her parenting time and she questioned how respondent could otherwise know that the children were in Waterford with their grandparents.

Petitioner's father testified that he did not think there had been a cordial pick-up or drop-off in the last four years, noting that respondent always has a camera in his face on those occasions and videotapes his license plate. He expressed concern with what respondent might do with that information, noting that "I know he's hired a private investigator in the past to follow me."

Considering the entire record before us, including the evidence of petitioner threatening violence during a custody exchange, which led to the parties being ordered not to leave their vehicles during exchanges, and the evidence that respondent decided to then stare down petitioner and her family, and film them during *every single* exchange of custody, we cannot find the trial court abused its discretion by refusing to terminate the PPO. Petitioner proved, by a preponderance of the evidence, that respondent had stalked her as defined by MCL 750.411h(1)(e), and that he had harassed her as defined by MCL 750.411h(1)(d). The hearing conducted in this matter, including testimony that respondent had behaved in that manner every single time there was a parenting-time exchange, supported the finding, under MCL 600.2950(4). There was reasonable cause to believe that respondent may commit one of more of the acts listed in subsection (1), because there was testimony provided by both parties confirming that respondent had previously committed one or more of the acts listed in subsection (1), including stalking and harassment, and the evidence supported the request for a PPO. See MCL 600.2950(4).

Although the trial court based its decision on harassment and stalking, the evidence introduced at the hearing established that respondent may have likewise exhibited another of the prohibited behaviors delineated in MCL 600.2950(1): removing a minor child from respondent's legal custody contrary to the parties' custody or parenting time order, MCL 600.2950(1)(d).[5] Thus,

_____

[4] Although petitioner refers to this couple throughout the hearing as the grandparents of the children, they were actually the parents of respondent's friend that he has known since 2003.

[5] This incident occurred a day before a scheduled parenting exchange. Petitioner messaged respondent on the parenting-time app, noting that a snow storm was coming to the area that day, and inquiring as to whether it might be safer to exchange the children that afternoon (so they would not be driving to school in wintry conditions the next day). Respondent sent some responses indicating that he was Baldwin fishing, and that the children could ride to his home on the school bus. However, because petitioner's phone was not working at that time, he never received a reply from her. When petitioner arrived at her son's school, he was nowhere to be found. Unbeknownst to her, respondent had arranged for the children to ride the school bus to his home. Petitioner believed that respondent was stalking her, did not believe he was fishing, and that there was no

the court could have determined that it was reasonable for petitioner to believe that such behavior may continue. But, because the trial court did not rely upon MCL 600.2950(1)(d), we will not address whether that provision also authorized the continuance of the PPO.

## C. PROCEDURAL DUE PROCESS

Finally, respondent argues the trial court denied him procedural due process under the federal and Michigan constitutions by disregarding the standard governing judicial review of a PPO petition and by actively facilitating petitioner's presentation of immaterial evidence to deny respondent's motion to terminate the PPO. Defendant never raised this issue in the trial court, in either his moving papers or during the three-day evidentiary hearing. Thus, the issue is unpreserved on appeal.

"Michigan generally follows the 'raise or waive' rule of appellate review," under which a litigant must raise an issue in the trial court in order to preserve it for appellate review. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). "In criminal cases, our Supreme Court adopted a plain-error test for claims of error that were not properly preserved in the trial court." *Tolas Oil & Gas Exploration Co*, 347 Mich App 280, 290, 294; 14 NW3d 472 (2023), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). But in general civil cases, the raise-or-waive rule is applied, not the plain-error standard applicable in criminal cases. *Id*. at 291-294. However, more recently, this Court held that, because of the potential for criminal consequences when a respondent violates a PPO, including the liberty interests at stake, we review unpreserved issues in PPO proceedings for plain error. *HMM by Next Friend CM v JS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367586); slip op at 4.

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763.

Respondent argues that the trial court violated his rights to due process by asking respondent questions about a prior neglect case while he was not on the witness stand, by alluding to "looking forward to interviewing the minor children" regarding an upcoming hearing, asking questions of petitioner at the time of her examination by respondent, and asking petitioner why she considered certain conduct by respondent to be stalking.

In *Pickering v Pickering*, 253 Mich App 694; 659 NW2d 649 (2002), this Court noted that MCR 3.310 "applies to a statutory action for an injunction 'only to the extent that it does not conflict with special procedures prescribed by the statute or the rules governing the special action.' " *Pickering*, 253 Mich App at 698 (quoting MCR 3.210(I)). MCL 600.2950(14) and MCR 3.707(A)(2) provide that a hearing must be held on a motion to modify or rescind an ex parte PPO,

---

reason for him to be there, noting that there was a snow storm. She also suggested that he had been engaged in this sort of conduct for the last 10 years. The court noted that such conduct by respondent violated the parenting-time order that was very specific about times and locations for picking up and dropping off of the children.

but neither state that an evidentiary hearing is required. Regarding the procedures pertaining to injunctive relief generally, this Court has held that some formal hearing is required, but an evidentiary hearing is not compulsory. *Campau v McMath*, 185 Mich App 724, 728; 463 NW2d 186 (1990).[6] In fact, the court need not even take testimony if "a party's entitlement to the injunction can be established in a particular case by argument, brief, affidavits or other forms of nontestamentary evidence." *Id*. "The trial court must, however, conduct an evidentiary hearing where the circumstances of the case require such a hearing." *Id*.

The deprivation of a constitutionally protected interest in life, liberty, or property violates procedural due process when it occurs without due process of law. *Zinermon v Burch*, 494 US 113, 125; 110 S Ct 975; 108 L Ed 2d 100 (1990). In the present case, the trial court obviously deemed the circumstances necessary to not only hold an evidentiary hearing, but to devote portions of three days to it. Thus, absent some evidence that deficient procedures led to the deprivation of respondent's cognizable liberty interests, respondent cannot establish that a due process violation occurred in this case. See *Bartell v Lohiser*, 215 F3d 550, 557 (CA 6, 2000).

Respondent's assertion that the trial court erred when it mentioned other actions, during the evidentiary hearing in this case, is contradicted by the Michigan Court Rules, which promote the principle that the court presiding over the PPO action should be familiar with other actions affecting the parties. For example, as previously noted, petitioner was required by the court rules to advise the trial court of "any other pending actions in this or any other court, or [of] any orders or judgments already entered by this or any other court affecting the parties"; that this matter be assigned to the same judge if the petition is filed in the same court; and that the trial court contact other court(s) where such pending actions were filed, or orders or judgments were entered, if practicable, to determine any relevant information. MCR 3.703(D)(1). Thus, despite defendant's assertion to the contrary, these rules promote the principle that the court hearing the PPO action should, when practicable, be knowledgeable about any relevant information pertaining to other actions affecting the parties. We accordingly cannot hold that the trial court plainly erred when it made reference to other actions and asked questions about other actions.[7]

Respondent also argues that the trial court erred by asking petitioner questions about past incidents of stalking during her examination by respondent, such as whether other stalking by respondent had occurred in the past during her parenting time. Under MRE 614, the trial court may call a witness on its own and it may examine a witness regardless of who calls the witness. That said, the Michigan Supreme Court has held that such questioning has boundaries. *People v Stevens*, 498 Mich 162, 174; 869 Mich 162 (2015). "[T]he central object of judicial questioning should be to *clarify*." *Id*. at 173 (emphasis added). Thus, it is appropriate for a judge to ask questions of witnesses to bring forth additional relevant information or to produce fuller and more exact testimony. *Id*. "A judge may intervene in a trial to expedite matters, prevent unnecessary

---

[6] Opinions of this Court issued before November 1, 1990 do not strictly bind this Court under MCR 7.215(J)(1), but may be considered persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 383 (2012).

[7] We note that respondent has not argued that MCR 3.703 violates the due process clause of the federal or Michigan constitution.

waste of time, or clear up an obscurity." *People v Swilley*, 504 Mich 350, 372; 934 NW2d 771 (2019).

In the present case, the record demonstrates that the questions asked by the judge brought forth additional relevant information. For example, the question about past stalking was specifically relevant to one of the issues before the court, which was the requirement under MCL 600.2950(4) to determine whether the individual to be restrained had previously committed or threatened to commit one or more of the acts listed in MCL 600.2950(1). Thus, we find that the court did not err by asking questions of respondent.

Finally, defendant argues the trial court erred by asking petitioner why she felt that respondent's behavior constituted stalking. Defendant argues that "the court repeatedly invited [petitioner] to essentially give her layperson's take on stalking." We disagree. Again, one of the issues to be decided by the court was whether reasonable cause existed to believe that the individual to be restrained or enjoined may commit one or more of the acts listed in MCL 600.2950(1). Among the acts listed is stalking, the definition of which can involve repeated harassment of another individual that would cause a reasonable person to feel frightened, intimidated, threatened, or harassed and that actually causes the victim to feel that way. MCL 750.411h(1)(e). Thus, it was relevant to the court's review of this matter to determine how respondent felt about petitioner's behavior, including why she felt that his behavior constituted stalking. We note that the court never asked respondent to analyze the legal definition of stalking, the court merely inquired as to why respondent's behavior made her feel like she was being stalked.

Therefore, we hold that, because respondent has not shown that the trial court plainly erred, he has forfeited any claim that the trial court violated his rights to procedural due process.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace