DALEY *v.* GRUBER.

1. BOUNDARIES—OCCUPATIONAL LINES—SURVEYS.
   Long established occupational lines are not to be disturbed by recent surveys.

2. SAME—IMPLIED AGREEMENT—ACQUIESCENCE.
   Courts will "imply" agreement from conduct of the parties, where there has been a settled boundary acquiesced in by both over a long period of time.

3. SAME—DEPENDENT DESCRIPTIONS—ACQUIESCENCE.
   A boundary line between property conveyed by a common owner of the property on both sides thereof and upon which other descriptions were dependent for their location, not being subject to disturbance as between the grantees of the common owner by reason of acquiescence, will likewise control the dependent descriptions.

4. SAME—ADVERSE POSSESSION—EVIDENCE.
   Finding of trial court of lack of adverse possession by defendants of strip of land the subject of a boundary dispute *held*, not contrary to the preponderance of the evidence.

5. APPEAL AND ERROR—REMAND—APPENDIX—DAMAGES.
   Case is remanded for determination of damages claimed by appellee because of inadequate compliance with court rule by appellants' appendix (Court Rule No 67, § 6 [1945], as amended).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am Jur, Boundaries § 80.
[2] 8 Am Jur, Boundaries §§ 72, 80.
   Establishment of boundary line by oral agreement or acquiescence. 69 ALR 1430, 113 ALR 421.
[3] 8 Am Jur, Boundaries § 50 *et seq.*
[4] 1 Am Jur, Adverse Possession § 246.
[5] 3 Am Jur, Appeal and Error § 1211.

Appeal from Tuscola; Quinn (Timothy C.), J. Submitted April 6, 1960. (Docket No. 16, Calendar No. 47,902.) Decided September 16, 1960.

Ejectment by Minnie Daley against Norman Gruber and Irene Gruber regarding adjoining parcel of land. Judgment for plaintiff. Defendants appeal. Affirmed. Remanded for recommendation as to certain costs. See opinion on acceptance of report, 362 Mich 366.

*Kern & Kern* (*Roland O. Kern,* of counsel) and *Maurice C. Ransford,* for plaintiff.

*Martin & Martin* (*Fred Martin, Jr.,* of counsel), for defendants.

SMITH, J. This case involves a dispute between 2 neighbors over a common boundary. The ownership of some 3-1/2 feet of land is involved. The defendants have fenced the strip. Plaintiff asserts that they unlawfully appropriated it and brings an action in ejectment. In answer the defendants contend not only that they have title to the strip but, in addition, that they have held it adversely for the statutory period.

Defendants claim under a deed granting them land of the following legal description:

"A piece of land commencing at a point 16 rods east of southwest corner of east half of southeast quarter of section 7, town 12 north, range 7 east, thence east 64-1/2 feet, thence north 153 feet, thence west 64-1/2 feet, thence south 153 feet to beginning."

Plaintiff's deed describes her land as:

"Commencing at a point 328.5 feet east of the southwest corner of the east half of the southeast quarter of section 7, town 12 north, range 7 east, thence north 153 feet, thence east 64.5 feet, thence south 153 feet, and thence west 64.5 feet to place of beginning."

So far, at least on paper, there seems to be no basis for dispute. Defendants' property commences 16 rods (264 feet) east of "southwest corner of east half of southeast quarter." Plaintiff's property commences 328–1/2 feet east of "the southwest corner of the east half of southeast quarter," just 64–1/2 feet east of the point at which defendants' property commences. But behind all of this there exists a difficulty, the location of "the southwest corner of east half of southeast quarter." Theoretically, it ought to be 1320 feet east of the south quarter post. Indeed, at this point the surveyor engaged by plaintiff, Mr. Black, found an iron stake in the base of a maple tree. Theoretically also, it ought to be 1320 feet west of the southeast corner post. Actually, however, it was discovered, there was an overrun of 6.56 feet between the south quarter post and the southeast corner post.

All of the land involved, the east half of the southeast quarter, was once farmland owned by the father of plaintiff's husband. The father conveyed property lying to the west of defendants', the Reese school property. In 1912, plaintiff and her husband took title to the remaining farmland. For many years there has been a fence of some kind on the line running 264 feet to the east of the iron stake which has served to divide the Reese school property from the adjoining property. Plaintiff testified that, in 1909, there was an old board fence there, which was replaced by a wire fence, that, in fact, there has been a fence there for 90 years.

In 1939, without the benefit of a survey, plaintiff and her husband agreed to sell part of their property to defendants' predecessors in title; the portion was determined by measurement and, on it, a house was built which has been occupied by defendants ever since. In 1940, they gave a deed, employing the legal description that appears in defendants' deed. In

1941, defendants put a picket fence up on the old fence line, replacing the wire fence that was there, and planted a hedge 64–1/2 feet to the east of that line. Clearly, defendants intended these to mark the boundaries of their property. Mr. Gruber testified that the hedge was "on the east line." He testified that he did not claim more than 64–1/2 feet of frontage. When asked, "Do you claim more than 64–1/2 feet frontage now?," he said, "I do now, after all those years I have had it, since I have surveyed it but I didn't know it before."

Following her husband's death, plaintiff disposed of the farm and reacquired the land she now holds and on which she now resides.

There seems to have been no serious boundary dispute until a survey was made by the State highway department. As the trial court observed, "although the record does not clearly disclose what this survey unveiled, it is a reasonable inference from exhibit 4 and exhibit 13 (Black's survey of March, 1957, and Martin's survey of June, 1956) that it disclosed the overrun of 6.56 feet in the southeast quarter of section 7."

The overrun mentioned would place "the southwest corner of the east half of the southeast quarter" 3.28 feet east of the iron stake and would cause a corresponding dislocation of all boundaries reckoned from it.

Relations between the parties became strained. Defendants erected what is described in the record as a "Page wire fence." In the course of erecting this fence, which marked the extent of defendants' claim to the strip, they destroyed, plaintiff testified ("grubbed out" was her expression), in her absence, the forsythia, mock orange, lilac, hyacinths, and other flowers and shrubs she had planted. The fence erected appears from photographs in exhibit to be both hog-tight and bull-strong. It was equally effec-

tive, as the trial court remarked, to "prevent the passage of the dove of peace."

The trial court concluded that "long established occupational lines are not to be disturbed by recent surveys." This statement is correct and it was correctly applied to the facts before us. Difficulty arises when the descriptions in deeds of conveyance must be applied to the land itself. Uncertainties that too often are left unresolved at the time of conveyance give birth to bitter dispute. Boundaries designated by the parties on the ground conflict with boundaries described in their deeds. A recent study has indicated the variety of doctrine brought to bear by the courts and the confusion that has resulted.[1] Fundamentally, however, the courts have observed a consistent policy, the same policy that is behind statutes of limitation and the doctrine of *res judicata,* namely, the policy of repose. Their decisions have been guided by the principle that settled boundaries shall be allowed repose and shall not be disturbed. In many cases there are elements of estoppel and in others there are agreements of the parties. But if the lack of an agreement threatens a settled boundary we do not hesitate to "imply" agreement, sometimes from the conduct of the parties, or from surrounding circumstances,[2] just as we do in other cases.[3]

---

[1] Browder, The Practical Location of Boundaries, 56 Mich L Rev 487; Browder, Boundaries, Description *v.* Survey, 53 Mich L Rev 647.

[2] *Tillman* v. *Hutcherson,* 348 Mo 473 (154 SW2d 104).

[3] Mr. Justice Holmes spoke with insight of conditions "implied" in a contract:

"You always can imply a condition in a contract. But why do you imply it? It is because of some belief as to the practice of the community or of a class, or because of some opinion as to policy, or, in short, because of some attitude of yours upon a matter not capable of exact quantitative measurement, and therefore not capable of founding exact logical conclusions. Such matters really are battle grounds where the means do not exist for determinations that shall be good for all time, and where the decision can do no more than embody the preference of a given body in a given time and place." Holmes, The Path of the Law, 10 Harv L Rev 457, 466.

In the case before us, we do not have acquiescence in a boundary line settled by agreement following a dispute, nor acquiescence for the prescriptive period. See *Hanlon* v. *Ten Hove,* 235 Mich 227 (46 ALR 788). What we have is acquiescence of the sort considered in *Maes* v. *Olmsted,* 247 Mich 180. It arises from the intention to describe in the deed the boundary marked on the ground by a common grantor. Although the 90-year fence above described is not on the eastern boundary of defendants' property, and thus on the line in dispute, it is on the western boundary thereof. Furthermore, it marks not only the intended point of commencement of the description of the defendants' property, upon which, in turn, plaintiff's is dependent, but it marked the boundary, as well, between land conveyed to the defendants by plaintiff and her husband, and the Reese school property, formerly owned.

The doctrine of acquiescence would not permit the line of the old fence, so marked, to be disputed as a boundary between adjoining owners. Nor, it follows, may it be disputed with respect to other descriptions dependent upon its location. Under these circumstances, after such a boundary has been so established, it must be presumed that descriptions in later conveyances by one of these parties, necessarily involving such boundary, are intended to refer to the boundary so located on the ground and not to some other imaginary line or point which might have been taken in the absence of such location. Lapse of time is not involved in the situation, nor a compromise line after dispute, but, rather, an identification of intended location by those who are to be affected.

With respect to the adverse possession asserted by defendants there was much testimony regarding a stone wall near the eastern boundary of defendants' lot, of picket fences, of gates and other para-

phernalia, and of their movements and locations through the years of each. We do not find that the trial court's holding of lack of adverse possession was contrary to the preponderance of the evidence.

Once again we have a litigant praying "special costs or award of special damages for inadequacy of appendix." For determination of defendants' compliance with Court Rule No 67, § 6 (1945), as amended,[4] we remand the case for the determination and recommendation to us described in *Greenough* v. *Greenough,* 354 Mich 508.[5]

The judgment of the lower court is affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

---

[4] See 347 Mich xxii, 355 Mich xiv.—REPORTER.
[5] See opinion on acceptance of report, 362 Mich 366.—REPORTER.