## COOLEY v. MARX

1. PROPERTY — MORTGAGE — FORECLOSURE — INTEREST ACQUIRED BY PURCHASER.

    A purchaser at a mortgage foreclosure sale acquires only such right, title, and interest in the mortgaged property as the mortgagor possessed at the time the mortgage was executed; therefore a plaintiff who acquired his property by deed in 1917 owned the property up to the line described in his deed despite claims to part of it, resulting from a faulty description in a sheriff's deed, by a person who acquired the remainder of plaintiff's grantor's property through foreclosure of a mortgage made in 1940.

2. PROPERTY—BOUNDARY—ACQUIESCENCE—FENCE LINE.

    Finding by trial court that a fence, constructed on an irregular line, often from tree to tree, represented the boundary between plaintiff's and defendant's property because of the acquiescence of both parties held, erroneous where there is no evidence to indicate that the fence was placed so as to be on the property line or that either of the parties intended the fence to represent the boundary.

3. PROPERTY—ADVERSE POSSESSION.

    The fact that defendant landowner during his testimony at trial claimed no more property than he actually owned precludes any claim of ownership by adverse possession of property described in sheriff's deed to defendant on foreclosure of mortgage made in 1940 but lying inside plaintiff's property line as determined by his 1917 deed.

REFERENCES FOR POINTS IN HEADNOTES

[1]  37 Am Jur, Mortgages §§ 746, 747.
[2]  12 Am Jur 2d, Boundaries § 71.
[3]  3 Am Jur 2d, Adverse Possession §§ 6, 96, 100.

Appeal from Berrien, Karl F. Zick, J.  Submitted
Division 3 April 8, 1969, at Grand Rapids.  (Docket
No. 5,454.)  Decided May 28, 1969.

Complaint by Harlan Wooster Cooley against
Henry C. Marx and Evelyn Marx, and other neigh-
boring property owners, to quiet title to certain
property.  Judgment rendered establishing bound-
ary lines.  Plaintiff appeals as to one line.  Re-
manded for entry of amended judgment.

*Gemrich, Moser, Dombrowski, Bowser & Garvey,*
for plaintiff.

*Theron D. Childs, Jr.,* for defendants.

BEFORE: Quinn, P. J., and Holbrook and T. M.
Burns, JJ.

Quinn, P. J.  Plaintiff filed this action to quiet
title to land fronting on Lake Michigan in Berrien
county.  Defendants Marx own land adjoining plain-
tiff's land on the northeast, and defendant township
owns the land on the southwest.  The boundaries
between the lands of these defendants and the land
of plaintiff are the areas in dispute.  The judgment
of the trial court fixes these boundaries to the satis-
faction of these defendants, but plaintiff is dis-
satisfied with his northeast boundary as established
by the judgment.  Defendants Kerr and Beckman
were dismissed by the judgment.

The titles of plaintiff, Marx and the township
stem from a common grantor, Margaret Glavin.  By
deed dated September 25, 1914, she conveyed the
land adjoining plaintiff on the southwest to the
township.  By deed dated March 1, 1917, Margaret
Glavin conveyed to plaintiff's predecessor in title
the land lying between the township and the north-

east boundary presently claimed by plaintiff. By mortgage dated January 26, 1940, Margaret Glavin mortgaged to Marxs' predecessor in title the land lying northeast of plaintiff. This mortgage was foreclosed, and by sheriff's deed dated March 17, 1941, Marxs' predecessor in title obtained title to the land adjoining plaintiff on the northeast. An error in the description in the sheriff's deed created an overlap along plaintiff's northeast boundary.

A purchaser at a mortgage foreclosure sale acquires such right, title and interest in the mortgaged premises as the mortgagor possessed at the time the mortgage was executed. *Schwartz* v. *Oakland County Sheriff* (1966), 4 Mich App 628. At the time the mortgage was executed, Margaret Glavin owned nothing southwest of the northeast line of plaintiff's property as it was established by her deed of March 1, 1917 to his predecessor in title. The record title fixes plaintiff's northeast line as the line described in the deed of March 1, 1917.

Until the events which led to this litigation transpired, there was no dispute between plaintiff and Marx or their predecessors as to the location of their mutual boundary. In fact, as the trial judge found, they did not know where it was. The first event was a survey in 1959 of plaintiff's property by one G. L. Wightman at the request of plaintiff.

Mr. Wightman had previously surveyed property to the northeast of Marx, and as he stated at trial, he had to protect that survey when he surveyed for plaintiff. In doing so, the south line of his survey became shorter than the south line in plaintiff's record title, the angle of the southwest line was changed and the line made longer, and the angle of the northwest line was altered slightly. The net result was to shift the lake frontage of plaintiff

several feet to the southwest and into the descrip-
tion of the township land.

Plaintiff's displeasure with this survey led to the
second event, another survey of plaintiff's land by
Kenneth I. Clark in 1962 at plaintiff's request. This
survey conformed to the calls and distances recited
in the Cooley title. In 1964, plaintiff brought this
action to establish his title to the land portrayed by
the Clark survey.

At trial it developed that plaintiff had maintained
a fence along the northeast side of his property off
and on since sometime in the 1930s. It commenced
at a point which is the point of commencement of
plaintiff's description according to his record title
and according to both surveyors, and ran north-
westerly toward the lake in an irregular line, often
from tree to tree. As it proceeded northwesterly,
it gradually ran more westerly and was about equi-
distant from the northeast line established by the
Clark survey and the same line established by the
Wightman survey. After view, the trial judge de-
termined the old fence line to be plaintiff's northeast
line on the basis of acquiescence.

In reaching this decision, the trial judge relied on
*Daley* v. *Gruber* (1960), 361 Mich 358. We consider
*Daley* inapposite to the case before us. Acquies-
cence applied in *Daley* because the fence involved
was the point of commencement of defendant's de-
scription and marked the boundary between defend-
ant and the adjoining owner, not Daley. In Cooley,
nothing was conveyed in relation to the fence.
There is no evidence indicating the fence was placed
on the northeast line of the Cooley property, and
the testimony of Cooley indicates it was placed with-
out reference to his northeast line as a convenience
to keep out trespassers. We find no basis for hold-

ing the fence to be the line between plaintiff and Marx.

Our *de novo* review of this record convinces us that the proper line between plaintiff and Marx is the northeast line of the Clark survey.

We also note that defendants are satisfied with the southwest line of plaintiff's property as fixed by the trial judge. The line so fixed was the southwest line of the Clark survey of plaintiff's property. This necessarily fixes plaintiff's northeast line as established by the Clark survey which conformed to the calls and distances of plaintiff's record title. Defendants Marx claimed no more than they owned which precludes any claim of adverse ownership to land lying southwest of plaintiff's northeast line as fixed by the Clark survey. *Warner* v. *Noble* (1938), 286 Mich 654.

Remanded for entry of an amended judgment which shall reflect the line between plaintiff and Marx as herein specified. In all other respects, the trial court is affirmed. Plaintiff may recover costs.

All concurred.