*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENISE HOUSTON,

        Plaintiff-Appellee,

V

MINT GROUP, LLC, and JACOB WIELHOUWER,

        Defendants-Appellants.

FOR PUBLICATION
January 28, 2021
9:20 a.m.

No. 353082
Kent Circuit Court
LC No. 19-03261-CH

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

MARKEY, J.

Plaintiff Denise Houston and defendant Mint Group, LLC (MGL), own neighboring properties in a residential area of Grand Rapids. As based on legal descriptions and surveys, a retaining wall and a strip of land landscaped with a garden, trees, and shrubs located on Houston's side of the retaining wall are both situated on MGL's land. In a quiet-title action, Houston alleged claims of adverse possession and acquiescence, contending that her predecessor parents had cared for and tended the strip of land up to the retaining wall for more than 15 years and that she also had maintained the area. The boundary dispute concerns the ownership of the strip of land bordering the retaining wall. On cross-motions for summary disposition, the trial court determined as a matter of law that Houston had obtained title to the disputed property by adverse possession. The trial court, therefore, declined to address the claim of acquiescence. On appeal, defendants argue that the element of "hostility" was not established, nor could it be, for purposes of adverse possession; consequently, the trial court erred in ruling in Houston's favor on the doctrine of adverse possession. Houston challenges defendants' position, but she also asserts that we can affirm on the alternate ground of acquiescence. We conclude that the trial court did not err in determining that Houston obtained title to the disputed strip of land under the doctrine of adverse possession; however, we also hold that Houston obtained title to the property by acquiescence. Accordingly, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The best way to quickly grasp the layout of the properties is by examination of the following survey from 2018:

-1-



Houston owns Lot 4, which is located on Union Avenue. To the north of and adjacent to Lot 4 is Lot 1,[1] which is owned by MGL and located on Pleasant Street (east-west street to the north of Lot 1 and not shown in survey). The two lots are improved properties with residential structures. The retaining wall is specifically identified in the survey, and a photograph of the retaining wall, looking at it from Union Avenue, is attached as Appendix A to this opinion. At issue in this case is a strip of land of about 120 square feet located between the retaining wall and the legally-described boundary line to the south of the wall that separates Lots 1 and 4.

Houston's property, Lot 4, has been owned by her family since 1952—at first by her parents George and Mable Houston under land contract (equitable title) and later by deed in 1960,[2] then by her mother Mable when her father George died in 1978, then by Mable and Houston jointly from 1990 to 1996, and then solely by Houston from 1996 forward under a quitclaim deed. MGL's property, Lot 1, was owned by Eugene and Virginia Proctor starting in 1968 when they purchased it by warranty deed. The Proctors conveyed the property to Vernon Proctor in 1977 by land

---

[1] Lots 2 and 3, which are not at issue in this case, are also situated to the north of and abutting Lot 4.

[2] The deed was not recorded until 1964.

contract, but Vernon transferred his interest back to Eugene and Virginia Proctor in 1981 by quitclaim deed. In 1990, the Proctors sold the property to Vincent Ingerson by land contract; however, he transferred his interest back to the Proctors by quitclaim deed in 1996. And in 2001, the Proctors conveyed Lot 1 by warranty deed to Kenneth Schaafsma, divesting the Proctors of their fee interest in the property. Schaafsma immediately transferred the property by warranty deed to Michael Van Dyke. Subsequently, Van Dyke defaulted on a mortgage that was granted in 2003, and the property was foreclosed on in 2009. Lot 1 was acquired in a sheriff's sale in 2009 by Bank of New York Melon Trust Company, which then conveyed the property to JPMorgan Chase Bank by quitclaim deed. Still in 2009, JPMorgan deeded the property to defendant Wielhouwer, who was a member of MGL and its resident agent. There were apparently some conveyances of Lot 1 between Wielhouwer and his wife, Tory Wielhouwer, and MGL after 2009. Then, in 2016, MGL acquired sole ownership of the property by warranty deed from Wielhouwer and his wife. MGL leases the house on the property to multiple tenants.

In April 2019, Houston filed a complaint to quiet title to the strip of land in dispute. She alleged that in 1952 her parents planted a garden, bushes, and trees on the disputed strip of land and attached a 1952 photograph of the area. Houston contended that her parents and then Houston herself maintained the strip of land continuously ever since 1952. She alleged that ownership was obtained by adverse possession and acquiescence around 1983 at the latest, which was 15 years after the Proctors had purchased Lot 1. Houston claimed that the Proctors and Houston's parents had always treated the retaining wall as the boundary line between the properties.

In January 2020, defendants moved for summary disposition under MCR 2.116(C)(10). With respect to the claim of acquiescence, defendants argued that the claim failed because Houston could not demonstrate that all owners of both parcels had treated the retaining wall as the true boundary line for any continuous period of 15 years, where the Proctors' ownership was interrupted by land contracts held by vendees who never indicated acceptance of the retaining wall as the boundary line. Defendants further maintained that 15 continuous years of acquiescence could not be established in regard to the owners of Lot 4 itself, considering that Houston could not speak to what her deceased parents believed or did not believe with respect to the location of the boundary line and retaining wall. As to adverse possession, defendants contended that Houston could not establish the required element of "hostility" because Houston took the position that her family's use of the disputed strip of land was always with the permission of the owners of Lot 1.[3]

Houston filed her own motion for summary disposition under MCR 2.116(C)(10). She argued that her mother had obtained title by acquiescence based on her parents' use of the disputed strip of land and that Mable subsequently and necessarily transferred that title to Houston. Houston contended that her parents and Eugene and Virginia Proctor treated the retaining wall as the

---

[3] Defendant Wielhouwer averred in an affidavit that he purchased Lot 1 in 2009, that he later quitclaimed the property to MGL in 2016, that he never understood or believed that the retaining wall was the boundary line between the relevant properties, that he never treated the retaining wall as such, and that he obtained a survey showing that the true boundary line "runs approximately 3 feet to the south of the retaining wall."

boundary line for more than 15 years. Houston relied on an affidavit by Virginia Proctor, who averred, in relevant part, as follows:

> 2. My husband, Eugene Proctor, and I purchased [Lot 1] . . . in January 1968 from Peter and Theresa Tiddens.
>
> 3. I believed at the time we purchased [Lot 1] that the boundary line between [Lots 1 and 4] . . . was marked by the retaining wall between the two properties.
>
> 4. I continued to treat the retaining wall as the property boundary line during my thirty-three (33) year period of ownership.
>
> 5. For the entire period of my ownership, I knew that George, Mable, and Denise Houston maintained a garden on the southern side of [the] retaining wall and I did not object to their possession and use of that strip of property.
>
> 6. Eugene Proctor and I did not take any legal action to claim title to the strip of property disputed in this case when we owned [Lot 1].
>
> 7. Eugene Proctor and I sold our interest in [Lot 1] in March 2001.

In conjunction with Virginia Proctor's affidavit, Houston relied on the 1952 photograph that ostensibly showed that her parents had maintained the disputed strip of land as a garden-type area. In the alternative, Houston argued that she obtained title based solely on her own period of ownership, absent consideration of her parents' ownership, as Houston had maintained the strip of land for the requisite 15-year period.

With respect to adverse possession, Houston argued that the evidence established all of the requisite elements as a matter of law, including hostility, on which issue Houston argued:

> [T]he possession was hostile in that it was adverse to the title originally owned by the Proctors. The element of hostility does not require an attitude of ill will, but rather activity adverse, or hostile, to another's rights. When two parties are unaware of the true boundary line and instead rely on a recognizable boundary marker (often a wall or fence) that causes one party to possess the property of another, that possession is considered hostile.

The parties filed responses to the competing motions for summary disposition, and where relevant to our resolution of this appeal, they will be discussed below.

At the hearing on the motions for summary disposition, the trial court indicated that it had thoroughly reviewed and was familiar with the motions and documentary evidence and, after asking the parties if they had anything more to add, presented them with a written opinion and order denying defendants' motion for summary disposition and granting Houston's competing motion. The trial court focused on Houston's claim that title should be quieted in her favor on the basis of adverse possession. The court found that although it was unclear when the Houstons first began gardening the disputed area, the evidence showed that a garden was fully established on the

strip of land in 1968, at which time the owners of Lot 1, the Proctors, "were disseised, accruing their cause of action." The trial court next addressed the issue whether the Proctors were effectively dissiesed of the strip of land for 15 *continuous* years in light of the periods during which Lot 1 was possessed by land contract vendees. The trial court ruled that contrary to defendants' assertions, "a land contract does not immediately divest the vendor of ownership." Citing and quoting caselaw, the court observed that legal title remains in the vendor under a land contract during the life of the contract, with equitable title being obtained and held by the vendee. And under such circumstances, the vendor retains the right to maintain a cause of action related to his or her legal title throughout the duration of the land contract. Consequently, the trial court determined that more than 15 years of continuous use from 1968 to 2001 had been "established and unrefuted."

Next, the trial court addressed the issue whether the element of hostility had been established. Referencing and noting subtle distinctions in the caselaw, the trial court observed:

> [H]ostility cannot be established where an individual adheres to a boundary they attempted, but failed, to mark [as] a true boundary line. Hostility is established when an individual adheres to a boundary they believe to exist but are mistaken. To illustrate, hostility does not exist where an individual erroneously places a fence line believing that line to mark the true boundary. Hostility does exist where an individual believes a pre-existing fence line marks a boundary when, in fact, it does not. This case clearly falls into the latter category. Regardless of the Houstons' intentions—whether their use of Defendants' property was intentional or mistaken—their use was hostile.

On the associated argument that "permission" allegedly negated the element of hostility, the trial court found that Virginia Proctor's affidavit could not reasonably be construed as indicating that the Houstons' use of the strip of land was by permission. Rather, according to the trial court, the affidavit merely stated that there was no objection to the Houston family's use of the disputed property. And when read in context, Virginia Proctor's affidavit simply reflected that the lack of an objection "was based on her lack of knowledge, not on her knowing consent." The court noted that "[i]t is not reasonable to impute an act of consent where none is expressed." The trial court next ruled:

> The remaining elements of adverse possession are satisfied by a common sense understanding of a residential garden as an improvement to land exclusively used by the homeowner. While there may be circumstances where a garden is shared by the community, there are no facts in this case which would suggest that this was that kind of garden. Every indication is that the land was used by the Houstons open and obviously, visible to the adjacent property, in full view of the community at large, and to the exclusion of all others. Defendant[s] raise[] no objections [n]or advance[] any argument contrary to this common-sense inference.

> Consequently, there is no genuine issue of material fact that [Houston's] predecessors in interest adversely possessed the land occupied by the Houstons' garden between the property line and retaining wall for more than 15 years. Accordingly, title to this property legally passes to [Houston]. Because this matter

is resolved under the doctrine of adverse possession, the Court does not address the parties' arguments relating to acquiescence.

Defendants MGL and Wielhouwer now appeal by right.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

We review de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). Actions to quiet title are equitable in nature, and equitable rulings are reviewed de novo. *Gorte v Dep't of Transp*, 202 Mich App 161, 165; 507 NW2d 797 (1993). With respect to analyzing a motion brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

"Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

### B. ADVERSE POSSESSION

#### 1. GOVERNING PRINCIPLES

The underlying statutory basis that gives rise to the doctrine of adverse possession is found in MCL 600.5801, which provides, in pertinent part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

Ordinarily, an action for the recovery or possession of land must be brought within 15 years after it accrues. MCL 600.5801(4); *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993). The *Kipka* panel, examining the principles of adverse possession, observed:

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. MCL 600.5829. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [*Kipka*, 198 Mich App at 439 (citations omitted).]

In *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006), this Court further explained the doctrine of adverse possession, touching on the requirement that the possession be hostile:

> Other cases additionally indicate that the possession must be hostile and under cover of a claim of right. *McQueen v Black*, 168 Mich App 641, 643; 425 NW2d 203 (1988), quoting *Connelly v Buckingham*, 136 Mich App 462, 467-468; 357 NW2d 70 (1984). "The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will[;]" rather, hostile use is that which is "inconsistent with the right of the owner, without permission asked or given," and which use "would entitle the owner to a cause of action against the intruder." *Mumrow v Riddle*, 67 Mich App 693, 698; 242 NW2d 489 (1976).

In *Gorte*, 202 Mich App at 170-171, this Court elaborated on some of the nuances with respect to the "hostility" element:

> Where a landowner possesses the land of an adjacent owner with the intent to hold to the true line, the possession is not hostile and cannot establish adverse possession. By contrast, where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession. As noted by this Court . . ., it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken . . . . [P]laintiffs in this case appear to have intended to hold to particular boundaries, but also believed that the boundary represented the true line. Plaintiffs therefore fall within the second group of adverse possessors in that they respected a line that they believed to be the true boundary, but which proved not to be the true

boundary. [Citations omitted; see also *DeGroot v Barber*, 198 Mich App 48, 52-53; 497 NW2d 530 (1993).]

The *DeGroot* panel similarly explained that placing a monument to mark a boundary line that turns out to be inaccurate despite the intent to place it on the true line cannot develop into adverse possession as hostility would be absent, but erroneously believing that a preexisting monument—either artificial or natural—represents the boundary and holding to that monument can satisfy the hostility element. *DeGroot*, 198 Mich App at 52 n 1.

"In order to support a claim of title by adverse possession, acts of possession must be open and of a hostile character, but it is sufficient if the acts of ownership are of such character as to indicate openly and publicly an assumed control or use such as is *consistent with the character of the premises in question*." *Rose v Fuller*, 21 Mich App 172, 175; 175 NW2d 344 (1970) (emphasis added).

Finally, successive periods of adverse possession by different parties can be joined or "tacked" to satisfy the 15-year statutory period, but only if there was privity of estate. *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001).

## 2. APPLICATION AND DISCUSSION

Defendants first argue that Houston "did not submit one shred of documentary evidence upon which the [trial] [c]ourt could possibly conclude that the hostility element of adverse possession had been met." Defendants maintain that with respect to "hostility" the trial court relied exclusively on Virginia Proctor's affidavit and the old black and white photograph that Houston claimed, without foundation, showed the garden area back in 1952. Defendants argue that this evidence demonstrated, at best, a mistaken belief by Mrs. Proctor about the boundary line, which was not relevant in determining the intentions of the *Houstons* relative to hostility. Defendants focus on the trial court's determination that this was a case involving a preexisting monument—the retaining wall—that the property owners mistakenly or erroneously believed was the true boundary line and held to it. Defendants contend that there was no evidence supporting this conclusion. Defendants argue that Houston "did not demonstrate when the retaining wall was created, why it was created, who created it or for what purpose." They assert that under all of the surrounding circumstances it is likely that the retaining wall was constructed with the intent that it mark the true boundary line. Defendants complain that Houston did not submit evidence upon which the court "could have concluded that [Houston's] predecessors adhered to an existing monument, rather than constructed the monument with intent to mark the true line." They claim that representations in Mrs. Proctor's affidavit cannot be imputed to Houston or her parents.

The trial court determined that the 15-year clock commenced ticking in 1968, which was the year that Eugene and Virginia Proctor purchased Lot 1. The court plainly relied on Mrs. Proctor's affidavit while noting that it was unclear when George and Mable Houston first gardened the strip of land in dispute. Defendants are correct that there is no evidence regarding when the retaining wall was constructed and who built it. Assuming Houston's characterization of the photograph is accurate, the picture from 1952, which is the year that Houston's parents purchased Lot 4 by land contract, shows the retaining wall. In 1968, the retaining wall was in existence, and Virginia Proctor averred that she believed that the retaining wall marked the boundary between

Lots 1 and 4, that she treated the wall as the boundary line for 33 years, that she knew that George, Mable, and Denise Houston maintained a garden on the south side of the retaining wall, and that she did not object to said possession and use. Under the circumstances presented in this case, for Houston to succeed on her adverse possession theory based on an accrual date of 1968, she needed to provide evidence for purposes of proving hostility that her parents intended to hold to the visible, recognizable retaining wall. See *Gorte*, 202 Mich App at 170-171; *DeGroot*, 198 Mich App at 52-53, 52 n 1. This issue requires us to discuss *Gorte* and *DeGroot* in more detail.

In *DeGroot*, 198 Mich App at 53, this Court affirmed the trial court's decision that the plaintiffs had established the elements of adverse possession, and the panel stated as follows in regard to the element of hostility:

> We believe that this case falls within the . . . principle . . . where a landowner intends to claim title to a visible, recognizable boundary; that is, where a landowner respected the line believed to be the boundary but that proved not to be the true line. The evidence indicated that plaintiffs, apparently operating under the mistaken belief that Ashard Road represented the true boundary line, claimed possession and ownership to Ashard Road, including the disputed parcel. That intention was manifested by plaintiffs' exclusive use of the property, the posting of no trespassing signs, and their denial of permission to defendants' predecessors in title to use the disputed parcel.

The Court's discussion somewhat blended or intertwined the states of mind regarding "intent" and "belief," and we now make clear that they are not one and the same for purposes of analyzing a claim of adverse possession and the element of hostility. In *DeGroot*, the plaintiffs *intended* to claim title or hold to a visible, recognizable boundary *and believed* that the boundary was the true line. But this does not mean that such intent and belief need to be established to show hostility—just the contrary. A party seeking to prove hostility need only demonstrate an intent to hold to a visible, preexisting, and recognizable boundary, and if there is evidence that the party did not believe that the boundary was the true line, it would make his or her case stronger because it would reflect true hostility. In that scenario, the party pursuing adverse possession would be indicating that he or she intended to hold to a visible, recognizable boundary regardless of or not caring whether it was the true line. Failure to show "belief" one way or the other does not doom a claim of adverse possession so long as there existed an intent to hold to a visible, recognizable boundary. *DeGroot* simply stands for the proposition that a party who does believe that the boundary is the true line is as entitled to claim adverse possession as the party who does not have such a belief.

*Gorte* solidified the principles espoused in *DeGroot*. In *Gorte*, this Court ruled that the plaintiffs had established adverse possession, where a predecessor in title testified that he specifically denied an encroachment accusation and expressed that he would stay put until shown a survey undermining his stance, and where yet another predecessor in title testified that he maintained the disputed land and "ejected trespassers." *Gorte*, 202 Mich App at 164. The *Gorte* panel stated:

> As in *DeGroot*, plaintiffs in this case appear to have intended to hold to particular boundaries, but also believed that the boundary represented the true line.

Plaintiffs therefore fall within the second group of adverse possessors in that they respected a line that they believed to be the true boundary, but which proved not to be the true boundary. [*Id.* at 170-171.]

Thus, both *DeGroot* and *Gorte* involved parties that intended to hold to visible, recognizable boundaries and also believed that those boundaries represented the true lines. But again, this does not mean that the "belief" component is an evidentiary requirement to support a claim of adverse possession.[4] This was made abundantly clear when this Court in *Gorte* stated that "where a person possesses the land of another intending to hold to a particular recognizable boundary *regardless of the true boundary line*, the possession is hostile[.]" *Gorte*, 202 Mich App at 170 (emphasis added). The *Gorte* panel noted that it did not wish to reward thieves while punishing persons who were merely mistaken. *Id.* at 170. Accordingly, the issue that we must confront is whether George and Mable Houston intended to hold to a visible, recognizable boundary, i.e., the retaining wall.

In *DeGroot*, there was evidence of exclusive use of the disputed land, the posting of no trespassing signs, and a denial of use of the property by others. *DeGroot*, 198 Mich App at 53. In *Gorte,* there was evidence of a denial of an encroachment accusation, a refusal to move, and the ejectment of trespassers. *Gorte*, 202 Mich App at 164. In this case, all we have is Mrs. Proctor's affidavit in which she averred that the Houstons "maintained a garden on the southern side of [the] retaining wall" and did so for 33 years. But intent can plainly be established by conduct and circumstantial evidence. See *Daley v Gruber*, 361 Mich 358, 362; 104 NW2d 807 (1960); *DeGroot*, 198 Mich App at 53. And the fact that the Houstons maintained the disputed strip of land for 33 years constituted evidence that they intended to hold to the visible, recognizable retaining wall as the boundary. In the context of the (C)(10) motions, Houston satisfied her obligation to submit documentary evidence to show hostility or, in this case, intent to hold to a visible, recognizable boundary, MCR 2.116(G)(3)(b), and defendants failed to counter that evidence with their own documentary evidence showing a lack of hostility or absence of such intent, which was necessary to create a genuine issue of material fact, MCR 2.116(G)(4).[5] Accordingly, Houston established as a matter of law that her parents had intended to hold to a visible, recognizable boundary, thereby proving hostility. We must, however, address defendants'

---

[4] Stated otherwise, *Gorte* and *DeGroot* would have reached the same conclusion even had it been shown that the plaintiffs did not believe that the visible, recognized boundaries to which they intended to hold were the true lines, or had there been no evidence on belief.

[5] MCR 2.116(G)(4) provides:

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

argument concerning the unknowns about when the retaining wall was constructed and who constructed it, which is part of defendants' challenge on the hostility element.

In *DeGroot*, 198 Mich App at 52 n 1, this Court, in noting a subtle factual distinction in determining if hostility exists, stated that "the difference is between erroneously placing a monument, intending to place it on the true line, but failing to do so, and erroneously believing a preexisting monument (either artificial or natural) represents the boundary, and holding to that monument." There is no hostility as to the former situation, but hostility does exist under the latter circumstances. See *id.* at 52. Relying on this language, defendants argue that Houston was required to submit evidence that her parents did not construct the retaining wall intending it to mark the true line. We conclude that defendants improperly place the evidentiary burden on Houston. Assuming that the 1952 photograph is problematic because of foundational issues, we note that Houston submitted documentary evidence in the form of Virginia Proctor's affidavit that indicated that starting in 1968, the Proctors and the Houstons treated the *existing* retaining wall as the boundary and that the Houstons maintained the disputed land up to the retaining wall. This was documentary evidence on the "hostility" element and, as discussed earlier, the submission shifted the burden to defendants to present evidence to the contrary in order to create a genuine issue of material fact. Consequently, it was up to defendants to produce evidence, if it existed, showing that Mr. and Mrs. Houston erected the retaining wall and did so with the intent that it mark the true line. No such evidence was submitted. Accordingly, we reject defendants' argument.

Defendants also challenge the element of continuousness, but we shall address that issue in the context of the acquiescence claim, which discussion has equal application to the claim of adverse possession. Given that we reject defendants' argument on that issue for the reasons stated below, we conclude that the trial court did not err in granting summary disposition in favor of Houston on her claim of adverse possession. Furthermore, even had Houston failed to prove entitlement to the property under the doctrine of adverse possession, the doctrine of acquiescence supported granting her title to the disputed strip of land.[6]

## C. ACQUIESCENCE

### 1. GOVERNING PRINCIPLES

Under Michigan law, parties may acquiesce to a new property boundary line. *Walters v Snyder*, 239 Mich App 453, 456-457; 608 NW2d 97 (2000). "[A]cquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Mason v City of Menominee*, 282 Mich App 525, 529-530; 766 NW2d 888 (2009) (quotation marks and emphasis omitted), superseded on other grounds by statutory amendment of MCL 600.5821 pursuant to 2016 PA 52. The three theories of acquiescence

---

[6] "[W]here the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005). In this case, the necessary facts were provided below.

include: "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Sackett v Atyeo*, 217 Mich App 676, 681; 552 NW2d 536 (1996). At issue here is the first theory—acquiescence for the statutory period. The statutory period for acquiring property by acquiescence is 15 years. MCL 600.5801(4); *Mason*, 282 Mich App at 529. A claim of acquiescence for the statutory period requires a showing that the property owners treated a boundary line or marker as the property line for 15 years. *Walters*, 239 Mich App at 457-458; see also *Killips*, 244 Mich App at 260 ("The doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line."). Our Supreme Court has repeatedly held that a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys. *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956).

"The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips*, 244 Mich App at 260. "Proof of privity is not necessary, however, to employ tacking of holdings to obtain the 15-year minimum under the doctrine of acquiescence[;] [t]herefore, when successive neighboring landowners use the property as marked by monuments . . . as if the monuments were accurate, for a period of 15 years, they have fixed the property line by acquiescence." *Siegel v Estate of Renkiewicz*, 373 Mich 421, 426; 129 NW2d 876 (1964). Unlike adverse possession, a claim of acquiescence does not require that possession of the land was hostile or without permission. *Walters*, 239 Mich App at 456. In *Wood v Denton*, 53 Mich App 435, 439-440; 219 NW2d 798 (1974), this Court explained that "[o]nly when there has been some agreement, whether tacit or overt, as to the location of the boundary does the question of acquiescence become important." The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes. *Killips*, 244 Mich App at 260.

## 2. APPLICATION AND DISCUSSION

Defendants argue that the trial court erred by ruling that Houston had established the element of continuousness for the requisite 15-year period.[7] Defendants contend that they have owned Lot 1 since 2009, that they have known the true boundary to be the surveyed line the entire time of ownership, and that any use of the disputed area by Houston during this period was with permission. Thus, the timeframe from 2009 forward could not be part of any continuous 15-year period. Similarly, according to defendants, the period of 2001 to 2009 cannot be considered because there were no affidavits or testimony from the owners of Lot 1 during those years, i.e., Kenneth Schaafsma, Michael Van Dyke, and the banking institutions. Furthermore, as to the years when Lot 1 was owned by the Proctors, Houston did not present any evidence in the form of affidavits or otherwise in regard to the beliefs, intentions, and knowledge of Houston herself or her parents. Defendants assert that Virginia Proctor's affidavit could not supply the missing information. Moreover, defendants argue that the land contract periods interrupted any continuous 15-year timeframe considering that those periods could not be tacked on to the years that the

---

[7] Defendants make this argument with respect to Houston's claims of adverse possession and acquiescence.

-12-

Proctors owned and possessed Lot 1. Defendants maintain that the Proctors had no right to physical possession or occupancy when the land contract vendees were living in the home on Lot 1. And there were no affidavits nor was there testimony by the land contract vendees. Defendants contend that the "equitable ownership conveyed by land contract begins a new 15-year statutory period."

We hold that Houston established as a matter of law acquiescence for the statutory period in light of the uncontroverted evidence that George and Mable Houston and Eugene and Virginia Proctor treated the retaining wall as the boundary line between Lots 1 and 4 for a continuous period of 15 years. In 1968, the Proctors purchased Lot 1, and for the next 15 years and far beyond, the Proctors continued to hold legal title to the property. During those first 15 years, Lot 4 was owned by George and Mable Houston jointly and then by Mable individually. As stated earlier, Virginia Proctor averred in her affidavit that she believed that the retaining wall marked the boundary between Lots 1 and 4, that she treated the wall as the boundary line for 33 years, that she knew that George, Mable, and Denise Houston maintained a garden on the south side of the retaining wall, and that she did not object to said possession and use. Even without an affidavit or testimony from any of the Houstons, Virginia Proctor's affidavit, which was uncontroverted, sufficiently conveyed that George and Mable Houston actually treated the retaining wall as the boundary line by maintaining the garden up to the south-side of the wall. We conclude from the averments in the affidavit that the Houstons tacitly agreed and acquiesced to treating the wall as the boundary line. And there was tacit agreement and acquiescence by the Proctors that the retaining wall represented the boundary line. See *Daley*, 361 Mich at 362 ("[I]f the lack of an agreement threatens a settled boundary we do not hesitate to 'imply' agreement, sometimes from the conduct of the parties, or from surrounding circumstances, just as we do in other cases.").

Contrary to defendants' argument, we conclude that the period of acquiescence, as well as the period of adverse possession, were continuous from 1968 to 1983 despite the fact that Vernon Proctor possessed Lot 1 from 1977 to 1981 under a land contract. As pointed out by defendants, Houston cannot rely on tacking because there is no evidence regarding Vernon Proctor's thoughts, actions, acquiescence, or lack thereof. But we agree with Houston that Vernon Proctor's period of possession did not interrupt the 15-year period because Mr. and Mrs. Proctor continued to hold legal title to Lot 1 from 1977 to 1981. A land contract is an executory contract in which legal title is retained by the vendor until the vendee performs all the obligations of the contract, even though equitable title does pass to the vendee upon proper execution of the land contract. *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999). Defendants' argument is built around assertions regarding the authority of and interest held by land contract vendees and the ability of vendees to claim adverse possession and acquiescence. But none of defendants' contentions undermines the proposition that a legal title holder who has acquiesced in a boundary line or has not taken legal action to eject an adverse possessor can continue to acquiesce or sit on ejectment rights even after a land contract vendee takes possession of the property. And Virginia Proctor's affidavit claimed acquiescence for the "thirty-three (33) year period of ownership," without any ejectment action. Therefore, for purposes of Houston's (C)(10) motion, the burden then fell on defendants to submit documentary evidence to counter the affidavit, i.e., evidence that Vernon Proctor did not acquiesce in treating the retaining wall as the boundary line or that he engaged in acts negating the elements of adverse possession. See MCR 2.116(G)(4). No such evidence was produced. Accordingly, Houston established her claim of acquiescence.

### III. CONCLUSION

We hold as a matter of law that Houston obtained title to the disputed strip of land under both the doctrines of adverse possession and acquiescence.

We affirm. We decline to tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ James Robert Redford
/s/ Mark T. Boonstra