*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

DETROIT LAND BANK AUTHORITY,

      Plaintiff-Appellee,

v

10043 AURORA DETROIT MI 48204 and 689
GLADSTONE DETROIT MI 48202,

      Defendants,

and

RICHARD MOWETT,

      Appellant.

UNPUBLISHED
October 07, 2024
1:44 PM

No.  363250
Wayne Circuit Court
LC No.  22-006255-CH

---

DETROIT LAND BANK AUTHORITY,

      Plaintiff-Appellee,

v

10043 AURORA DETROIT MI 48204 and 279
HOLBROOK DETROIT MI 48202,

      Defendants,

and

DAVID MOWETT,

      Appellant.

No.  363253
Wayne Circuit Court
LC No.  22-006255-CH

---

Before:  BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

-1-

PER CURIAM.

In these consolidated appeals,[1] appellants, appearing *in propria persona*, appeal by right the trial court's decision quieting title to property in favor of plaintiff. In Docket No. 363250, Richard Mowett (Richard) appeals the trial court's decision related to property located at 689 Gladstone in Detroit, and in Docket No. 363253, David Mowett (David) appeals the trial court's decision related to property located at 279 Holbrook in Detroit. We affirm in both docket numbers.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from appellants' failure to renovate properties they purchased from plaintiff. David purchased 279 Holbrook on July 31, 2018, and Richard purchased 689 Gladstone on December 14, 2018. Although Richard was a married man, he was the only purchaser of the Gladstone property. As part of their purchase agreements, Richard and David promised to renovate and rehabilitate their properties within six months of the sale. Also as part of the agreements, Richard and David each executed a reconveyance deed, a quitclaim deed that purported to convey the properties back to plaintiff. Under the purchase agreements, the reconveyance deed would not become effective until plaintiff recorded it in the event of a breach by the purchaser. Although the agreement provided that if the purchaser was a married man, his wife must also execute the reconveyance deed, Richard's wife did not sign his reconveyance deed.

Richard and David failed to renovate and rehabilitate the properties as promised. The properties remained virtually untouched for more than three years. On April 27, 2021, plaintiff sent an e-mail to David, stating that it was allowing him seven days to provide updates on the renovation, or else reconveyance would occur. Just four minutes later, however, plaintiff sent David another e-mail stating that plaintiff had already taken ownership of the property and that the reconveyance deed had already been recorded. The same thing happened to Richard; he received two e-mails four minutes apart on June 4, 2021, communicating the same conflicting information.[2] After appellants received their respective emails, plaintiff and appellants discussed an extension to the deadline for avoiding reconveyance, and plaintiff gave them a hard deadline of August 31, 2021 to submit materials indicating that they were in compliance with their purchase agreements, but they again failed to do so.

On May 26, 2022, plaintiff filed a petition for expedited quiet title and foreclosure on numerous properties, including 689 Gladstone and 279 Holbrook. Plaintiff alleged that it was the owner of the properties. Plaintiff also alleged that under the Land Bank Fast Track Act (LBFTA),

---

[1] See *Detroit Land Bank Auth v 10043 Aurora Detroit MI 48204*, unpublished order of the Court of Appeals, entered January 30, 2024 (Docket Nos. 363250 and 363253).

[2] The reconveyance deeds were not recorded on the date the emails were sent to either appellant; rather, Richard's reconveyance deed was recorded on June 16, 2021 and David's reconveyance deed was recorded on June 29, 2021.

MCL124.751 *et seq.*, all legal interests and liens against properties it owned may be extinguished, and plaintiff sought to quiet title.

The hearing on the petition for all of the properties was originally scheduled for July 12, 2022. But the hearing with respect to the two properties involved in this appeal was adjourned to August 30, 2022. Plaintiff filed a supplemental brief in the trial court with respect to those properties. Plaintiff noted, among other things, that the chimney was deteriorating at the Holbrook address and that neighbors were concerned that it would collapse and damage their property. Plaintiff attached photographs of both 279 Holbrook and 689 Gladstone, showing the dilapidated conditions.

Only Richard filed objections to the petition. Regarding his specific legal objections, Richard argued that (1) plaintiff had violated the LBFTA by not providing notice of the expedited quiet title hearing, and because the scheduled August 30, 2022 hearing was illegally taking place more than 90 days after the filing of the petition; (2) he had received conflicting information from plaintiff on June 4, 2021 regarding the reconveyance of the property back to plaintiff; and (3) the reconveyance deed was void because his wife did not sign it.

At the August 30, 2022 hearing, the trial court granted an adjournment until September 13, 2022, to allow appellants' newly-retained counsel time to become familiar with the case. Between the two hearing dates, appellants paid for some renovations to be done to the Holbrook home, which they estimated cost approximately $15,000.

At the September 13, 2022 hearing, plaintiff argued that Richard and David had done essentially nothing on the properties for four years. Further, even though the properties had been reconveyed back to plaintiff, this quiet title action was necessary because "there is no other way to get [appellants] to go away except for this Court to enter [a judgment of quiet title]." Plaintiff noted that appellants had made many visits to the properties even after being notified that such conduct is trespassing. Appellants' counsel conceded that David had done "a considerable amount of work[]" since the August 30, 2022 hearing without plaintiff's permission. But appellants' counsel also argued that plaintiff had provided contrary information regarding the reconveyance, that the reconveyance deed was not properly notarized, and that Richard's wife did not sign the reconveyance deed.

The trial court granted quiet title in favor of plaintiff. The court found that the photographs of the premises "show these properties to be nothing short of a disaster. There is nothing not only to indicate that no improvements of any visible nature were made but, in fact, there is every reason to think just as a layperson these properties have been utterly and completely neglected." The court also found it troubling that even after it has been made very clear that appellants were not to trespass on the properties, they ignored that demand. The trial court acknowledged that it saw that some contractors had pulled permits to perform work on the properties, but it stated:

> [I]t's all related to what's going to be done in the future. This is four years that people in the neighborhood have had to put up with properties that are, quite frankly, disgraceful aesthetically and a physical danger as represented to this Court.

Four years of promises. Four years of no action. Four years of city of Detroit neighbors having to endure this type of circumstance is way more than enough.

It's the ruling of the Court that the Court will, in fact, quiet title to 689 Gladstone and 279 Holbrook with the Detroit Land Bank.

The court entered a judgment as described. These appeals followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's equitable actions to resolve title disputes to property. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008). We review for clear error the trial court's factual findings. *Id*. We review de novo questions of contract interpretation. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 526; 791 NW2d 724 (2010). We also review de novo questions of law, such as whether a document is eligible for recording and the proper interpretation of a statute. See *City of Taylor v Detroit Edison Co*, 475 Mich 109, 115; 715 NW2d 28 (2006); *Stumbo v Roe*, 332 Mich App 479, 484; 957 NW2d 830 (2020). "Whether due process has been afforded is a constitutional issue that is reviewed de novo." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

## III. DOCKET NO. 363250

## A. BREACH OF CONTRACT

On appeal, Richard argues that the trial court's quieting of title in favor of plaintiff should be reversed because of the conflicting June 4, 2021 emails plaintiff sent to him. We disagree.

The emails at issue were sent in the early morning hours of June 4, 2021. The first email had a time stamp of 3:48 a.m. and stated, in pertinent part:

> You are currently out of compliance with the purchase agreement you signed for the property at 689 Gladstone and have failed to provide regular updates to the Detroit Land Bank Authority (DLBA).
>
> If we do not hear from you within seven (7) days of the date this letter is sent, we will assume that you are choosing not to comply with the terms of the purchase agreement, and we will begin the reconveyance process back to the DLBA. If the property is reconveyed to the Detroit Land Bank Authority you will forfeit your deposit, the purchase price, the subject property, any improvements to the property and you will be banned from any further participation in the Building Detroit Auction.
>
> To avoid reconveyance back to the DLBA, send a photo update using your Update Reporting Link (URL) below with pictures, receipts, permits, bills, and other proof showing you are making progress on the property. If you are unable to use your URL, you may email us your photos . . . . [Emphasis omitted.]

Then, just four minutes later at 3:52 a.m., plaintiff sent another email to Richard, stating:

> The Detroit Land Bank Authority (DLBA) has taken ownership of 689 Gladstone, due to insufficient proof of renovation progress. We have sent several warnings and the terms of the Purchase Agreement have not been met. The DLBA has recorded the reconveyance deed that you signed at closing with the Wayne County Register of Deeds and have taken legal ownership and possession of the property. You have forfeited all costs related to the purchase and renovation of this property.
>
> ### **PLEASE STOP ALL WORK ON THE PROPERTY!**

Richard argues that these emails violated § 19(f) of the purchase agreement, which details part of a purchaser's obligations. Section 19(f) provides:

> 19. **Purchaser's Obligations, Requirements, and Restrictions.**
>
> \* \* \*
>
> f. If the DLBA determines that Purchaser has not complied with the terms of this Agreement, the DLBA will notify Purchaser in writing indicating in what respects Purchaser has failed to comply, and what measures and acts Purchaser must take or perform in to cure such noncompliance. Purchaser shall thereafter complete the work as required by this Agreement and any time period required under the written notice of noncompliance.

Richard therefore argues that because plaintiff's later email effectively rescinded its offer to allow Richard seven days to contact plaintiff to explain why he has been noncompliant, it is in violation of § 19(f). While it certainly is strange for plaintiff to have sent the back-to-back emails, with one allowing for a seven-day window before reconveyance would occur and the other email stating that reconveyance had already occurred, any confusion or discrepancy caused by the emails does not require reversal of the trial court's decision. Notably, § 20 of the purchase agreement also provides the following:

> 20. **DLBA's Remedies upon Purchaser's Breach of Agreement.** If at any time Purchaser fails to timely comply with any condition, covenant or obligation it has under this agreement . . ., in addition to any other remedies provided in this Agreement, may seek any and all of the following as its remedies:
>
> \* \* \*
>
> b. In the event of a breach of this Agreement by Purchaser, and in addition to the remedy provided in Subsection (a) above, the DLBA may in its sole discretion take any one or more of the following actions:
>
> > (1) Post a warning notice on the Property.

(2) Record the Reconveyance Deed at the Wayne County Register of Deeds Office, reconveying ownership of the Property back to the DLBA.

(3) Take immediate possession of the Property.

(4) Enter and secure the Property.

(5) Remove all occupants and personal belongings from within the Property.

(6) Take immediate ownership of all improvements and fixtures intended to be permanently attached to the Property.

(7) Offer the Property for sale to other prospective purchasers, whether by auction or otherwise, or hold the Property.

Accordingly, under the purchase agreement, upon a breach by a purchaser plaintiff could immediately record the reconveyance deed to reclaim ownership. There is no requirement that any notice be given or that plaintiff must allow a noncompliant party time to alleviate or explain its breach. To the extent this conflicts with § 19's proclamation that in the event of a breach, plaintiff "will notify Purchaser in writing indicating in what respects Purchaser has failed to comply, and what measures and acts Purchaser must take or perform in to cure such noncompliance," this provision is located under the section related solely to a *purchaser's* obligations, and should be viewed in that context. In other words, § 19(f) only imposes obligations on a purchaser—not plaintiff—in the event that plaintiff exercises its discretion by allowing a purchaser to cure any noncompliance. Consequently, plaintiff was not *required* to notify a purchaser in writing of any breaches nor was it *required* to allow a purchaser to take remedial efforts to cure the noncompliance. This interpretation is further reinforced by the plain language of § 20, which provides that the remedies listed in that section are "in addition to any other remedies provided in this Agreement."

Therefore, although the June 4, 2021 e-mails provide conflicting information, there was no breach of contract on plaintiff's part, because plaintiff was not required to allow Richard any time to explain or rectify his noncompliance. Section 20 plainly allows plaintiff to record the reconveyance deed immediately upon a breach by a purchaser. Moreover, it is well established that a party who breaches an agreement first cannot maintain an action for the other party's subsequent breach of that same contract. *Able Demolition v City of Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). Richard was contractually bound to "renovate and rehabilitate" the property within six months of closing on the property on December 14, 2018. The photographs provided to the trial court showed that virtually nothing had happened with the properties in nearly four years. Therefore, with Richard substantially breaching the agreement first, he cannot rely on any subsequent breach by plaintiff. *Id.*

Richard also cites the doctrine of promissory estoppel in support of his argument, but he does not explain how that doctrine is pertinent. Under the concept of promissory estoppel, courts will enforce a promise if the following are established:

"(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." [*Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; 950 NW2d 502 (2019) (citation omitted).]

Initially, we note that Richard has claimed that plaintiff breached an express contract, i.e., the purchase agreement. A claim for promissory estoppel seeks to have a contract implied by law, but a contract will be implied only if there is no express contract covering the same subject matter. See *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). Therefore, to the extent that Richard's claim for promissory estoppel is based on the same subject matter as the purchase agreement, it must fail. In any event, Richard has failed to show how any promise from plaintiff induced action of a definite and substantial character on his part. Clearly, if he had relied on the seven-day deadline found in the first email, he would have submitted the updates within seven days, but Richard does not claim that he did. Moreover, the record shows that both Richard and David were in contact with plaintiff after receiving their respective emails, and were given an ultimate deadline of August 31, 2021 to submit the compliance materials, and they again failed to do so. Richard has provided no evidence that he relied to his detriment upon any promises made by plaintiff.

## B. DUE PROCESS

Richard also argues that the June 4, 2021 e-mail he received saying that the reconveyance deed had been recorded violated his right to due process of law, and suggests that he was denied an opportunity to be heard before plaintiff reclaimed ownership. We disagree.

Richard's argument on this issue is extremely undeveloped. He cursorily asserts that the June 4 e-mail violates due process, without explaining why or how. He cites general law that due process requires notice to be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, see *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950), but he does not explain how the June 4, 2021 e-mail failed to apprise him of *anything,* let alone the pendency of any action. The failure to adequately brief an issue results in it being abandoned. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019).

Richard also generally avers that plaintiff failed to follow "state and federal guidelines that required additional compliance with real estate notices, foreclosures[,] evictions and notifications in regards to vacating a property." But Richard does not provide any details of what these guidelines are or how they were not followed. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003).

## C. INVALID RECONVEYANCE DEED

Richard also argues that the reconveyance deed recorded by plaintiff was invalid because his wife did not sign it. We disagree.

Richard correctly notes that under the purchase agreement, his wife was required to sign the reconveyance deed. He also asserts that because of the lack of his wife's signature, the deed "was not eligible for recording and violated Michigan Deed recording statutes." For these two reasons, he argues, the reconveyance deed filed was not valid. Regarding his second argument, it is not clear what statute Richard claims violated. He cites MCL55.307 for the proposition that "a court may invalidate any notarial act that is not performed in compliance with the Michigan Notary Public Act."[3] But this statute has nothing to do with whether the deed was eligible for recording without his wife's signature. Without citing which "Michigan Deed recording statute" supposedly makes the deed unrecordable, Richard has abandoned this argument. See *Johnson*, 256 Mich App at 339; *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Regarding his argument that the reconveyance deed was invalid under the purchase agreement, it is true that purchase agreement required "Purchaser [to] execute the Reconveyance Deed and deliver it to the DLBA . . . . If the Purchaser is a married man, the Purchaser's wife must also execute the Reconveyance Deed." Notably, however, only Richard and plaintiff are parties to the purchase agreement, with Richard being identified as the sole "Purchaser." There is no record evidence that Richard's wife held any interest in the property; the Michigan Legislature abolished the common-law concept of dower effective April 6, 2017. See 2016 PA 489; MCL558.30; *In re Estate of Burnett*, 341 Mich App 613, 617-618; 992 NW2d 325 (2022). Richard does not assert that his wife *has* an interest in the property, much less describe what that interest may be. In any event, the reconveyance deed was a quitclaim deed purporting to convey Richard's interest in the property back to plaintiff. See *Eastbrook Homes, Inc v Dep't of Treas*, 296 Mich App 336, 348-349; 920 NW2d 242 (2012). Richard has not explained how, even if the purchase agreement was technically breached by his wife not signing the reconveyance deed, such a breach requires that the deed conveying his interest in the property be invalided. As described, Richard's failure to comply with the purchase agreement by properly renovating the property and updating plaintiff on that progress gave plaintiff the right to immediately take ownership back by recording the reconveyance deed.

## D. REPAIRS AND RENOVATIONS

Richard also argues that the trial court erred by quieting title because appellants paid for $15,000 worth of renovation and repairs to the Holbrook home between the time of the August 30, 2022 hearing and the September 13, 2022 hearing. We disagree.

We note that the photographs provided to the trial court do not depict work done at the Gladstone home (purchased from plaintiff by Richard); instead, they reflect work done at the Holbrook home (purchased from plaintiff by David). Richard offers no argument why work done on the Holbrook home should have any bearing on why quiet title was not appropriate for the Gladstone home. Any repairs and renovations done to the Holbrook home are irrelevant to whether title to the Gladstone home was appropriately quieted. Additionally, even if some progress had been undertaken on the Holbrook home between August 30, 2022, and September 13, 2022, it does

---

[3] The proper name of the act is the Michigan Law on Notarial Acts." MCL55.261. MCL55.307(2), which is part of that act, allows a court to "invalidate any notarial act not performed in compliance with this act."

not alter the fact that virtually no work had been done from December 14, 2018—the date Richard purchased the Gladstone home—until September 2022. With Richard having done nothing of any substance in nearly four years, the trial court did not clearly err by finding that Richard had not satisfied his responsibility to restore the property under the purchase agreement. Consequently, the trial court did not err by quieting title in favor of plaintiff.

Richard next argues that reversal is required because of certain irregularities in the proceedings. We disagree.

Richard first contends that plaintiff violated MCL124.759 by failing to post notice of the expedited quiet title action at the Gladstone property. He also claims that this failure constitutes a due-process violation. MCL124.759(7) provides, in relevant part:

> Not less than 30 days before the quiet title and foreclosure hearing under subsection (11), the authority or its authorized representative or authorized agent shall visit each parcel of property subject to expedited foreclosure and post conspicuously on the property notice of the hearing.

And MCL124.759(11) pertinently states:

> If a petition for expedited quiet title and foreclosure is filed under subsection (3), before the hearing, the authority shall file with the clerk of the circuit court proof of notice by certified mail under subsection (6), proof of notice by posting on the property under subsection (7), and proof of notice by publication, if applicable.

There is no record evidence to support Richard's contention that the posting on the Gladstone property did not occur. On the contrary, the record contains the affidavit referenced in MCL 124.759(11), averring that notice, which was "clearly visible from the street and readable as posted," was posted at the Gladstone address on June 9, 2022. Therefore, with no evidence to support Richard's position, we reject his argument.

## E. VIOLATION OF THE LBFTA

Richard also argues that the hearing related to the Gladstone property occurred on August 30, 2022, which is outside the statutorily required 90-day window required by the LBFTA. We disagree. MCL124.759(3) and (4) state:

> (3) An authority may file a single petition with the clerk of the circuit court in which property subject to expedited foreclosure under this section is located listing all property subject to expedited foreclosure by the authority and for which the authority seeks to quiet title. If available to the authority, the list of properties shall include a legal description of, a tax parcel identification number for, and the street address of each parcel of property. *The petition shall seek a judgment in favor of the authority against each property listed and shall include a date, within 90 days, on which the authority requests a hearing on the petition.* The petition shall request that a judgment be entered vesting absolute title in the authority, without right of redemption for each parcel of property listed, as provided in this section. Prior to the entry of judgment under this section, the authority may request the court

to remove property erroneously included in the petition, or any tax delinquent properties redeemed prior to the hearing.

(4) The clerk of the circuit court in which a petition is filed under subsection (3) *shall immediately set the date, time, and place for a hearing on the petition for foreclosure*. The date shall be set by the clerk and shall not be more than 10 days after the date requested by the authority in the petition. *In no event may the clerk schedule the hearing later than 90 days after the filing of a petition by the authority under subsection (3)*. [Emphasis added.]

In this case, the petition was filed on May 26, 2022. And in that petition, plaintiff requested a hearing date on all 27 properties to be held on July 12, 2022, which is within 90 days. Indeed, a notice of hearing was filed providing notice that the hearing was to occur on July 12, 2022. The accompanying proof of service indicates that Richard was mailed this notice on June 30. In other words, the initial scheduling of the hearing was compliant with the LBFTA. The hearing for the Gladstone and Holbrook properties was then adjourned to August 30, 2022, and that notice was mailed to both Richard and David. Richard filed his objections in advance of the August 30 hearing, and his attorney appeared at that hearing. At that hearing, Richard's attorney requested a brief adjournment because he had only recently been retained, and the trial court granted the adjournment to September 13, 2022.

We perceive no violations of the LBFTA. While the act establishes requirements for setting the *initial* hearing date, significantly, there are no prohibitions or limitations against adjournments. If the Legislature had intended to not allow any adjournments beyond the 90-day window, it could have stated so, but the language of the act clearly only contemplates the scheduling of the initial hearing. Subsection (3) requires the petitioner to request an initial hearing date within 90 days. And Subsection (4) requires the court clerk to immediately set a date for that initial hearing within 90 days of the petition being filed. As explained earlier, with the initial hearing being set for July 12, 2022, these requirements were satisfied. It is highly doubtful that the Legislature intended to not allow any subsequent adjournments beyond that 90-day window without clearly specifying that limitation. Courts are not to read language into an unambiguous statute. *Wilmington Savings Fund Society, FSB v Clare*, 323 Mich App 678, 689; 919 NW2d 420 (2018).

## F. ABANDONED OR UNPRESERVED ARGUMENTS

In his brief on appeal, Richard argues that the trial court failed to address his objections to the petition, but he does not specify which objections he believes had merit. It is not enough to simply assert that the court failed to generally address arguments. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Johnson*, 256 Mich App at 339.

Additionally, to the extent that Richard argues that the trial court encouraged appellants to work on the properties between August 30 and September 13 2022, that argument is waived because it was not raised in the trial court. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023); slip op at 4-5 (holding that unpreserved issues in civil cases are waived); *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d

809 (2020) (stating that an issue must be raised or decided in the lower court to preserve it for appellate review).

Richard also asserts that plaintiff violated the covenant of good faith and fair dealing in several ways. However, Richard never made this argument in the trial court, which means it is not preserved for appellate review and is also waived. See *Glasker-Davis*, 333 Mich App at 227; *Tolas Oil*, ___ Mich App at ___; slip op at 4-5.

## IV. DOCKET NO. 363253

### A. CONFLICTING EMAILS

In Docket No. 363253, David argues that the conflicting e-mails he received on April 27, 2021, require that this Court reverse the trial court's decision to quiet title in favor of plaintiff. We disagree. As explained, no written notice was required for plaintiff to reconvey the property back to itself after David failed to fulfill his obligations under the purchase agreement; therefore, to the extent David argues that plaintiff breached the purchase agreement, we disagree for the same reasons stated in Section III(A) of this opinion.

### B. INVALID RECONVEYANCE DEED

David argues that the reconveyance deed was not properly notarized because the notary was not present when he signed the deed. We hold that David is not entitled to any relief.

David's argument implies that because the deed was not property notarized, the trial court should not have quieted title in favor of plaintiff. He does not explain why it would follow that if the deed was not properly notarized, this Court should reverse the trial court's ultimate ruling to quiet title in favor of plaintiff. In any event, the record is devoid of evidence to support David's assertion that the notary was not present when he signed the deed. David supplied no affidavits or other evidence in the trial court to support his position. In his brief on appeal, David states that he "can testify that he only recalls [a different individual] being at the closing." A promise to provide evidence later is not evidence. See *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999) (noting that "[a] mere promise" to produce evidence in a summary-disposition setting is not evidence).

David also states that the notary did not use a stamp on the deed. But he does not explain how using a stamp was required or, conversely, how the failure to use a stamp means the deed is void. Indeed, such a position is contrary to MCL55.287(2), which simply permits a notary to use a stamp—it is not required.[4]

---

[4] MCL55.287(2) provides:

> On each record that a notary public performs a notarial act and immediately near the notary public's signature, as is practical, the notary public shall print, type, stamp, or otherwise imprint mechanically or electronically sufficiently clear and

We find no defect with the notarization of the reconveyance deed requiring invalidation of that deed, or otherwise requiring reversal of the trial court.

## C. ABANDONED AND UNPRESERVED ARGUMENTS

David argues that the conflicting e-mails he received violated his right to due process, but does not support this argument with factual or legal authority. This argument is therefore abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Johnson*, 256 Mich App at 339.

David's appellate brief also contains the following statement of the question presented:

Did the circuit court's advise [sic] at oral argument at the first hearing on August 30th, 2022 hearing that immediate action needed to be taken in regards to the property. (Appendix G, Trial Court First Hearing 8/30/22 pg. 8 lines 9 to 25 & pg. 9 lines 1 to 8). Also see additional photos submitted to DLBA and trial court in Appendix D[.]

This statement is nonsensical; it does not form a complete or meaningful sentence. To the extent that David attempts to argue that the trial court made a statement at the August 30, 2022 hearing prior to adjournment that requires reversal of its quiet title decision, that argument is unsupported by facts or law and is abandoned. See *Froling v Carpenter*, 203 Mich App 368, 373; 512 NW2d 6 (1993). Moreover, because the issue is not raised before the trial court, it is waived. See *Tolas Oil*, ___ Mich App at ___; slip op at 4-5.

David also argues that plaintiff's agents made misrepresentations during the proceedings below. Because David never raised these arguments in the trial court, they are waived. See *id*. Alternately, the issue also is abandoned because David does not adequately brief why he is entitled to relief for this issue. David identifies three instances of alleged misconduct: (1) plaintiff failed to provide a copy of its supplemental brief and accompanying photographs to David; (2) at the September 13, 2022 hearing, plaintiff's attorney referred to the property as a "pile of rubbish"[5]; and (3) plaintiff's attorney allegedly told David that if he agreed to drop his interest in the Holbrook property, then plaintiff would allow appellants to work on the Gladstone property. David provides no law, theory, or rationale why any of these acts would be a ground to reverse the trial court. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Johnson*, 256 Mich App at 339.

## V. CONCLUSION

---

legible to be read by the secretary and in a manner capable of photographic reproduction all of the following . . . .

[5] At the hearing, plaintiff's counsel stated, "[T]he neighbors have had to deal with these two piles of rubbish for four years." Appellants' counsel even conceded at that same hearing that the properties were "of course, in poor condition" and "obviously" "need . . . quite a bit of work."

-12-

Affirmed in both docket numbers. As the prevailing party, plaintiff may tax costs. MCR7.219(A).

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood